RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 12a0389p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MICHAEL DALE RIMMER,

        *Plaintiff-Appellant,*

    *v.*

ERIC H. HOLDER, JR., in his official capacity
as Attorney General; UNITED STATES
DEPARTMENT OF JUSTICE; FEDERAL BUREAU
OF INVESTIGATION; ROBERT S. MUELLER III,
in his official capacity as Director (FBI),

        *Defendants-Appellees.*

No. 11-6286

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:10-cv-1106—Aleta Arthur Trauger, District Judge.

Argued: October 10, 2012

Decided and Filed: November 21, 2012

Before: BOGGS and CLAY, Circuit Judges; and STAFFORD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Kelly A. Gleason, OFFICE OF THE POST-CONVICTION DEFENDER, Nashville, Tennessee, for Appellant. H. Thomas Byron III, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Kelly A. Gleason, OFFICE OF THE POST-CONVICTION DEFENDER, Nashville, Tennessee, for Appellant. H. Thomas Byron III, Leonard Schaitman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

---

[*] The Honorable William H. Stafford, Jr., United States District Judge for the Northern District of Florida, sitting by designation.

---

**OPINION**

---

BOGGS, Circuit Judge.  In 1998, Appellant Michael Dale Rimmer was convicted and sentenced to death in Tennessee state court for the murder of Ricci Lynn Ellsworth.  After his conviction, Rimmer learned that the federal government had conducted a joint investigation of Ellsworth's murder with the Memphis Police Department and now alleges that this investigation produced exculpatory evidence to which he should have been privy.  Based on these allegations, Rimmer instituted state post-conviction proceedings, and in the course of preparing for these proceedings, was able to obtain some, but not all, of the allegedly exculpatory evidence directly from the Memphis Police Department.  In order to obtain a complete record of the allegedly exculpatory evidence, Rimmer next turned to the FBI, submitting a Freedom of Information Act (FOIA) request that sought all FBI documents relating to Rimmer.  In response, the FBI released 189 full or partially redacted pages from a total of 616 pages believed to be in its relevant files.  Rimmer appealed the FBI's response to the United States Department of Justice Office of Information Policy, which upheld the FBI's limited release of documents.

Rimmer then filed claims under the Administrative Procedure Act (APA), 5 U.S.C. § 702, and the Mandamus Act, 28 U.S.C. § 1361, in the United States District Court for the Middle District of Tennessee, seeking to compel the FBI to release unredacted versions of all documents in its possession that related to Rimmer.  Rimmer later amended his complaint to add a claim under FOIA, 5 U.S.C. § 552(a)(4)(b).  Soon after, the FBI determined that the relevant files contained 786 pages and released all of them to Rimmer.  However, 704 of the released pages were partially redacted, and Rimmer continued to press his suit, disputing the redactions on 539 of these 704 pages.

The district court dismissed Rimmer's APA and mandamus claims as precluded by the existence of an adequate remedy under FOIA.  The district court, after conducting an *in camera* review of the unredacted documents, also granted summary judgment to

the government on Rimmer's FOIA claim, holding that the FBI's redactions were proper under FOIA Exemptions 7(C) and 7(D) and that, in the case of the 7(C) redactions, there was not a "countervailing public benefit" to support disclosure of this otherwise protected information. Rimmer appeals both the district court's dismissal of his APA and mandamus claims and its grant of summary judgment in favor of the government on his FOIA claim. For the reasons outlined below, we affirm the judgment of the district court.

## I

On February 8, 1997, Ellsworth, a clerk at the Memphis Inn in Memphis, Tennessee, went missing. Memphis police and the FBI conducted a joint investigation of Ellsworth's presumed death as part of the FBI Safe Streets Task Force (SSTF). During this investigation, James Darnell, a United States Army sergeant stationed in Hawaii who was visiting family in Memphis, approached the FBI and stated that between 1:30 and 2:30 a.m. on the night of Ellsworth's disappearance, he had seen two white males in the motel office where Ellsworth worked and that they were taking money from the cash register and had blood on their hands. Darnell's descriptions of the two men did not match Rimmer's physical appearance. On May 20, 1997, FBI agents in Hawaii showed Darnell several photo lineups that included pictures of both Rimmer, who had emerged as a prime suspect, and Billy Wayne Voyles, a man with an outstanding arrest warrant for unrelated attempted murder and robbery charges. Darnell identified Voyles as one of the bloodied men he witnessed taking money from the motel. He did not identify Rimmer. On May 22, 1997, the FBI sent a form documenting the results of the photo lineup back to the Memphis SSTF office. The FBI conducted a second photo lineup in Hawaii, on June 21, 1997, in which Darnell again identified only Voyles—and not Rimmer—as one of the men he observed. On June 24, 1997, the FBI sent the Memphis SSTF office a form documenting the results of this lineup as well.

In 1998, Rimmer was convicted of Ellsworth's murder in Tennessee state court and sentenced to death. Having learned that Rimmer had been sentenced to death in state court, the United States Attorney declined prosecution and closed the federal

investigation of Rimmer. After several appeals to the Tennessee Supreme Court concerning the sentencing phase of his trial, Rimmer's death sentence was ultimately affirmed in 2008. That same year, Rimmer filed a petition for post-conviction relief in Tennessee state court.[1]

Rimmer alleges that he learned of the joint federal investigation of Ellsworth's death only while preparing for his post-conviction proceedings. During this preparation, he made state public-information requests and thus acquired proof of Darnell's identification of Voyles from an FBI form, documenting the results of the photo lineup, that was in the "residual evidence" file in the Tennessee state court clerk's office. Rimmer asserts that only through this independent investigation did he learn of Darnell's identification of Voyles as a potential suspect. He also claims that the lead investigator for the state gave false testimony at trial—that Darnell had not identified anyone from the photo lineups—in an effort to prevent Rimmer from discovering exculpatory evidence.

On April 7, 2009, in preparation for his state-court post-conviction proceedings, Rimmer sent a Freedom of Information Act request to the FBI, seeking all records relating to Ricci Ellsworth, Billy Wayne Voyles, James Darnell, and Michael Rimmer.[2] The FBI informed Rimmer that it would not be able to initiate searches under FOIA for records relating to individuals other than Rimmer until it received proof of death or a

---

[1]On October 12, 2012, Rimmer's petition was granted, and his conviction was overturned. *Rimmer v. Tennessee*, No. 98-01034 (Tenn. Crim. Ct. Oct. 12, 2012). Assuming Rimmer still seeks the documents at issue—potentially for a new trial—the issue before this court is not moot.

[2]Beginning in September 2009, Rimmer also attempted to obtain these documents through state-court discovery in his post-conviction proceedings. Tennessee Assistant District Attorney General John Campbell initially suggested that he request the relevant files from the FBI. Assistant United States Attorney Tony Arvin, who was present in the courtroom when Campbell made this proposal, then contacted the FBI to request that it retrieve Rimmer's file and make it available to him. In March 2010, however, Arvin and FBI Special Agent David Lee met with Campbell and informed him that the FBI would not be able to release the file. The Tennessee state court then denied Rimmer's subsequent motion for an order directing the State to comply with discovery obligations, holding that it did "not have the authority to order the U.S. attorney or the FBI to disclose their files." Order Denying Discovery of Materials in Possession of the Federal Government at 3, *Rimmer v. Tennessee*, Nos. 98-01034, 97-02817, 98-01033 (Tenn. Crim. Ct. July 12, 2010).

privacy waiver.**3** In addition, the FBI located 616 pages relating to Rimmer—called Rimmer's relevant file—and provided Rimmer with 62 pages in full and 127 pages that were partially redacted under various FOIA exemptions. On August 7, 2009, Rimmer appealed the FBI's response to the Department of Justice's Office of Information Policy, which affirmed the FBI's decision.

Rimmer then proceeded to file the instant lawsuit in the United States District Court for the Middle District of Tennessee against the United States Attorney General, the Department of Justice, and the FBI, asserting claims under the APA, 5 U.S.C. § 702, and the Mandamus Act, 28 U.S.C. § 1361. Specifically, Rimmer argued that the district court could order full production of the documents he sought under § 706 of the APA, which provides a district court with authority to set aside an agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," that was "contrary to constitutional right, power, privilege, or immunity," or that was "without observance of procedure require [*sic*] by law," Rimmer Compl. at 21 (quoting 5 U.S.C. §§ 706(2)(A), (B), & (D)), and under the Mandamus Act, which Rimmer claimed gave district courts "the power to compel third party federal agencies to produce requested documents," *id*. at 21–22. Rimmer also later amended his complaint to include a claim for full production of the documents under § 552(a)(4)(b) of FOIA, which permits a district court "'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" Rimmer Am. Compl. at 1–2 (quoting 5 U.S.C. § 552(a)(4)(B)).

After filing this suit, Rimmer entered into negotiations with the FBI, during which the FBI updated the size of his relevant file to 786 pages. The FBI released 82 of these pages to Rimmer in full and provided partially redacted versions of the remaining 704, basing these redactions on FOIA exemptions 6, 7(C), and 7(D). Rimmer continued to dispute the redactions on 539 of the 704 partially redacted pages, and it is

---

**3**On July 7, 2009, the plaintiff responded to the FBI, explaining why there was no death certificate for Ellsworth and again requested access to her records. On August 10, 2009, the FBI informed Rimmer that a search for Ellsworth's records had not revealed any more information than that which had already been disclosed in the search for records pertaining to Rimmer. In addition, Rimmer made no further efforts to obtain Volyes's and Darnell's records, and they are thus not the subject of this appeal.

only the propriety of these contested redactions that was litigated in the district court and that is now before this court on appeal. Upon agreement of the parties, the government submitted unredacted versions of the 539 disputed pages to the district court for an *in camera* review of the FBI's redactions.

The government then filed: (1) a motion to dismiss Rimmer's APA and mandamus claims, arguing, *inter alia*, that they were precluded by the existence of an alternative adequate remedy, *i.e.*, a claim brought pursuant to FOIA; and (2) a motion for summary judgment on Rimmer's FOIA claim, arguing that the FBI had released all requested information except that protected by proper FOIA exemptions.

The district court granted the government's motion to dismiss Rimmer's APA and mandamus claims. It based its dismissal of the APA claim on § 704 of the APA, which allows judicial review only "where there is 'no other adequate remedy in a court.'" *Rimmer v. Holder*, No. 3:10-1106, 2011 WL 3565224, at \*3 (M.D. Tenn. Aug. 15, 2011) (quoting 5 U.S.C. § 704). After noting "numerous cases in which [courts] concluded that a plaintiff could not pursue an APA claim because his FOIA claim provided an 'adequate remedy,'" *ibid.*, the district court found that "Section 704 of the APA clearly prohibits [Rimmer] . . . from asserting both a FOIA and an APA claim in the same litigation," *id*. at \*4. The district court based its dismissal of Rimmer's mandamus claim on similar grounds, pointing to Sixth Circuit case law that allows for mandamus only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Id*. at \*5 (citing *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011)). Again noting that "the FOIA claim provide[d] an adequate and available remedy for [Rimmer], who, through the FOIA claim and the mandamus claim, [sought] the same relief—the production of documents," the district court, without addressing parts (1) and (2) of the mandamus test, found that part (3) was unsatisfied and thus that the mandamus claim "fail[ed] on its face." *Ibid*.

After conducting its *in camera* review, the district court also granted the government's motion for summary judgment on Rimmer's FOIA claim. The court began

by noting that the government "must show that it made a 'good faith effort to conduct a search for the requested records['] . . . and that [any] withheld materials fall within a FOIA statutory exemption." *Rimmer v. Holder*, No. 3:10-1106, 2011 WL 4431828, at *4 (M.D. Tenn. Sept. 22, 2011) (quoting *CareToLove v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011)). Since Rimmer did not challenge the government's making of a good-faith search, the district court focused on the applicability of FOIA exemptions to the redacted material in the 539 disputed pages. *Ibid.* The government based its redactions on three FOIA exemptions—6, 7(C), and 7(D)—which the district court summarized as follows:

> Exemption 6 states that the agency's FOIA disclosure obligations do not extend to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7 applies to certain "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Specifically, Exemption 7(C) protects from disclosure [of] information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). And, Exemption 7(D) protects from disclosure [of] information in such records that "could reasonably be expected to disclose the identity of a confidential source," along with "information furnished by a confidential source" during a criminal investigation. 5 U.S.C. § 552(b)(7)(D).

*Id.* at *5. Observing that "all of the redacted records were compiled for law enforcement purposes," the court then proceeded to evaluate almost all the redactions under Exemption 7(C), which "provides broader privacy protections than Exemption 6." *Ibid.*[4]

The district court evaluated the applicability of Exemption 7(C) under the balancing test laid out in *United States Department of Justice v. Reporters Committee*

---

[4] A few of the redactions at issue were made under Exemption 7(D), which exempts disclosures that could reveal the identity of a confidential source. *See* 5 U.S.C. § 552(b)(7)(D). The confidential sources in this case were individuals who had called a confidential Crime Stoppers hotline to provide information relating to the Ellsworth investigation. The district court noted that Rimmer's primary argument in opposition to these redactions was merely that, through other investigation, he had discovered the names of the confidential sources that the government sought to protect. *Rimmer v. Holder*, No. 3:10-1106, 2011 WL 4431828, at *5 n.5 (M.D. Tenn. Sept. 22, 2011). The district court quickly disposed of this argument by noting this circuit's holding in *Rugiero v. United States Department of Justice*, 257 F.3d 534, 551 (6th Cir. 2001), that the protections of 7(D) apply even if "a confidential source is later revealed."

*for Freedom of Press*,  489 U.S. 749, 762 (1989), explaining that the privacy interests that a FOIA disclosure of law-enforcement records would compromise must be weighed against the public interest in the disclosure. *Rimmer v. Holder*, No. 3:10-1106, 2011 WL 4431828, at *5 (M.D. Tenn. Sept. 22, 2011).  In addition, the court explained that because "the [private] information at issue was 'compiled through the power of the state,' . . . [it] should only be disclosed where the requester shows that the disclosure seeks to advance a 'significant' public interest and . . . will 'likely' actually advance that interest." *Ibid*. (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).

The district court began the balancing analysis by noting that the redacted information was primarily the names and other identifying information of:

> (1) FBI special agents and support personnel; (2) third parties who provided information to law enforcement; (3) state or local law enforcement personnel; (4) third parties merely mentioned; (5) third parties with criminal records/rap sheets; (6) third parties of investigative interest; (7) non-FBI federal government personnel; and (8) third party victims.

*Ibid*.  The court held that significant privacy interests would be compromised by releasing the personal information of these individuals, as disclosure would subject them to the negative connotation of being linked with a criminal investigation, expose them to the risk of harassment or criticism, and create a chilling effect on those who might be inclined to provide information to law enforcement in the future.  *Id*. at *6.  The court also observed that its conclusions were "well supported" by this circuit's existing case law.  *Id*. at *5 (citing *Kiraly v. FBI*, 728 F.2d 273, 277 (6th Cir. 1984)).

The district court then went on to evaluate the public interest in disclosure.  It dispensed with Rimmer's first alleged public interest—that "unredacted production would be a tool to aid him in his underlying state collateral review proceedings"—by noting numerous cases from this circuit that have found such private advantage to be an illegitimate purpose under FOIA, one that confuses the goals of FOIA with those of civil discovery.  *Id*. at *7.  The court acknowledged that Rimmer's second public interest,

"shedding light on how the federal agencies operate and whether they could work to imprison someone illegitimately," was undoubtedly valid, but held that the disclosures Rimmer sought would not likely serve that interest. *Ibid*. Based on its *in camera* review, the district court found:

> [W]hat is redacted is names and identifying information, primarily of those who provided information to the police during the underlying investigation. The Government is not, for instance, attempting to withhold material that indicates which documents were (or were not) timely disclosed to the defendant or that indicates that a witness perjured himself at trial. In short, the plaintiff has identified strong public interests, but he has not connected those interests to the material actually redacted.

*Id*. at *7 n.8. The district court buttressed this conclusion with the Supreme Court's language in *Reporters Committee*, indicating that the public purpose of "'shed[ding] light on an agency's performance of its statutory duties . . . is not fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct.'" *Id*. at *7 (quoting *Reporters Comm.*, 489 U.S. at 772). Thus, because there was no significant countervailing public interest *that disclosure would likely serve*, the district court held that redaction under 7(C) was appropriate.

The district court closed by noting that while there were "a handful of places" where the government redacted information that was not "facially 'identifying,'" the government was simply "being extremely 'careful' to redact information that could, if certain connections between individuals were made, arguably be used to identify particular individuals who provided information to law enforcement." *Id*. at *8. The court concluded:

> [Based on] the heightened privacy protections that are owed to these individuals who willingly provide potentially incriminating information to law enforcement and the fact that none of the information redacted sheds light on how the Government entity actually performs its functions or suggests that the government agency has been involved in imprisoning an innocent individual, the redactions are not inappropriate.

*Ibid.*

Rimmer appealed both the district court's dismissal of his APA and mandamus claims and its grant of summary judgment of on his FOIA claim.

**II**

**A**

As a preliminary issue, the government contends that "Rimmer does not challenge the district court's FOIA decision on appeal, and accordingly has waived any argument that he is entitled to additional information under FOIA." Gov't. Br. at 11. While it is true that "an issue that is not raised in  a party's briefs may generally be deemed waived," *Bi Feng Liu v. Holder*, 560 F.3d 485, 489 n.4 (6th Cir. 2009), Rimmer has put forward a sufficiently concrete argument—that "although the right to disclosure is more limited under FOIA then [*sic*] the APA and mandamus claims, Mr. Rimmer should be entitled to disclosure of the requested information under the specific facts presented in the district court given precedents in this Court," Rimmer Br. at 27—to challenge the district court's FOIA determination and defeat the government's claim of waiver.

**B**

Rimmer's FOIA claim was properly denied. Rimmer brought this claim pursuant to FOIA § 552(a)(4)(b), which gives a district court the authority "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B)). In the instant case, the FBI, after negotiations with Rimmer, released all documents in its possession pertaining to Rimmer. The only action that Rimmer challenges is the FBI's decision to redact certain identifying information from 539 of the 786 pages that were ultimately released. The district court granted summary judgment for the government, relying primarily on exemption 7(C) to uphold the redactions. On appeal, Rimmer argues that "under the specific facts presented in the district court" and "given the precedents in this

Court," he is entitled under FOIA to unredacted versions of the documents he seeks. Rimmer Br. at 27.

Section 552(a)(4)(B) of FOIA states that a district court should review an agency's denial of a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B); *see also Rugiero*, 257 F.3d 534, 543 (6th Cir. 2001). In addition, "[t]he propriety of a district court's grant of summary judgment in a FOIA proceeding is similarly reviewed de novo on appeal." *Abraham & Rose, P.L.C. v. United States*, 138 F.3d 1075, 1078 (6th Cir. 1998).

FOIA begins with the baseline rule that federal agencies must respond promptly to requests for records that contain a reasonable description of those records and are made in accordance with published rules and procedures. 5 U.S.C. § 552(a)(3). Only if one of the enumerated FOIA exemptions applies may an agency withhold requested records, *id*. § 552(d), and even then, the exemptions are to be narrowly construed, *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). This reflects FOIA's "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (internal quotation marks omitted).

As most challenges to an agency's use of a FOIA exemption involve purely legal questions, district courts typically resolve these cases on summary judgment. *Rugiero*, 257 F.3d at 544. To prevail on summary judgment, the government must show that it made a "good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information" and that any withholding of materials was authorized within a statutory exemption. *CareToLove*, 631 F.3d at 340. As the district court properly noted, Rimmer did not dispute that the FBI conducted a good-faith search for records pertaining to him, but only challenged the redactions it made within his relevant file. Thus, on summary judgment, the district court addressed only the applicability of the government's claimed exemptions.

As this court has noted in the past, the resolution of an exemption's applicability at the summary-judgment phase "creates a situation in which a plaintiff must argue that the agency's withholdings exceed the scope of the statute, although only the agency is

in a position to know whether it has complied with the FOIA . . . ." *Rugiero*, 257 F.3d at 544. Ordinarily, an agency will offer detailed affidavits, rather than the requested documents themselves, to justify its decision to withhold information, and these affidavits are entitled to a presumption of good faith absent evidence to the contrary. *Jones v. FBI*, 41 F.3d 238, 242–43 (6th Cir. 1994). If bad faith on the part of the agency is shown, however, a district court may conduct an *in camera* review of any documents withheld or redacted. U.S.C. § 552(a)(4)(B); *see also Jones*, 41 F.3d at 242–43.

In this case, the government itself moved to submit unredacted copies of the contested documents to the district court for *in camera* review. After a conference in which all parties agreed to this course of action, the district court granted the motion and undertook an *in camera* review of the documents at issue to determine the applicability of the government's claimed exemptions.

## C

The government based its redactions on FOIA exemptions 6, 7(C), and 7(D), which allow an agency to withhold disclosure of:

> **(6)** personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;
>
> **(7)** records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, [or] (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source . . . .

5 U.S.C. §§ 552(b)(6), (b)(7)(C), (b)(7)(D). The district court began its analysis of these exemptions by noting that "Exemption 7(C) provides broader privacy protections than Exemption 6." *Rimmer v. Holder*, No. 3:10-1106, 2011 WL 4431828, at *5 (M.D. Tenn. Sept. 22, 2011). Accordingly, it grouped the redactions that the government based on

Exemption 6 with the redactions based on Exemption 7(C) and analyzed them all under the more protective terms of 7(C). *Ibid.*

We agree with this strategy. While Exemption 7(C) has a threshold requirement that the documents at issue be compiled for law enforcement purposes, once this prerequisite is met, Exemption 7(C) allows an agency to withhold a broader range of information than Exemption 6. *See Reporters Comm.*, 489 U.S. at 756. As the Supreme Court has observed, not only does "Exemption 6 require[] that the invasion of privacy be 'clearly unwarranted,' [while] the adverb 'clearly' is omitted from Exemption 7(C)," but "Exemption 6 [also] refers to disclosures that 'would constitute' an invasion of privacy, [while] Exemption 7(C) encompasses any disclosure that 'could reasonably be expected to constitute' such an invasion." *Ibid.* Because it is undisputed that all the redactions at issue were contained in FBI records compiled for the purpose of law enforcement, the district court correctly applied the more protective standards of Exemption 7(C) to both the government's Exemption 6 and Exemption 7(C) redactions. We therefore will travel the same path, first analyzing the propriety of the Exemption 6 and 7(C) redactions, all under the rubric of 7(C), and then moving to those redactions made under Exemption 7(D).

**D**

In determining whether information contained in law-enforcement records "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 522(b)(7)(C), a court must "balance the privacy interest" in withholding the redacted information with the "public interest in [its] release." *Reporters Comm.*, 489 U.S. at 762; *see also Kiraly*, 728 F.2d at 277 ("The first inquiry is whether public access to the information sought constitutes an invasion of privacy. If there is such an invasion, the question becomes whether the invasion is justified by any countervailing public benefit from its disclosure."). In addition, the Supreme Court has clarified that the public interest in disclosing the information must be "significant" in order to outweigh any privacy interests implicated. *Nat'l Archives*, 541 U.S. at 172.

In this case, the district court, after its *in camera* review of the challenged documents, indicated that the information redacted under Exemption 7(C) consisted of names and other identifying information of various individuals associated with the investigation of Ellsworth's murder. This finding is not disputed. With respect to the privacy interests involved in preventing disclosure of such information, this circuit, along with many others, has recognized that "people who were investigated for suspected criminal activity or who were otherwise mentioned therein . . . could [be] subject[ed] . . . to embarrassment, harassment and even physical danger." *Kiraly*, 728 F.2d at 277 (internal quotation marks omitted); *see also, e.g.*, *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (asserting that "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation" (internal quotation marks omitted)); *Librach v. FBI*, 587 F.2d 372, 373 (8th Cir. 1978) (holding that the release of third-party personal information contained in law enforcement records was "a clearly unwarranted invasion of personal privacy"). This privacy interest exists not only for those who are suspects in an investigation, but also for third parties mentioned in the documents, such as witnesses, informants, and investigators. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) ("[T]he exemption protects the privacy interests of all persons mentioned in law enforcement records, whether they be investigators, suspects, witnesses, or informants."); *Wood v. FBI*, 432 F.3d 78, 88 (2d Cir. 2005).

To outweigh these privacy concerns, Rimmer must show a "significant" countervailing public benefit in releasing the personal information that the FBI redacted. In determining what interests are legitimately "public," the Supreme Court has focused on the primary purpose for which FOIA was enacted, *i.e.*, "to open agency action to the light of public scrutiny." *Reporters Comm.*, 489 U.S. at 772 (internal quotation marks omitted). "Whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to [this] basic purpose of the Freedom of Information Act . . . rather than on the particular purpose for which the document is being requested." *Ibid* (internal quotation marks omitted). In

other words, there must be a significant public interest in shedding light on the actions of the agency from which documents are being sought.

Furthermore, even when a significant public interest exists, the Supreme Court has also required a showing that disclosure of 7(C) information will likely serve that public interest:

> Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure. First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted.

*Nat'l Archives*, 541 U.S. at 172. In sum, the requester must not only present an interest that is both public and significant, but also demonstrate that disclosure of the information sought will further that interest.

Before the district court, Rimmer pressed his interest in "investigating and presenting in state court exculpatory evidence developed by the state and federal government," Rimmer Resp. to Gov't's Redactions at 6, an interest the district court properly rejected as "illegitimate." This court has made clear that the purpose of FOIA is not to act as a "substitute for the normal process of discovery in civil and criminal cases" and will not turn the purpose of advancing private litigation into a public one. *Jones*, 41 F.3d at 250; *see also Rugiero*, 257 F.3d at 547; *Fruehauf Corp. v. Thornton*, 507 F.2d 1253, 1254 (6th Cir. 1974).

On appeal, Rimmer appears to abandon this argument and focus on the second countervailing public benefit that he put forward in the district court—"the revelation of wrongdoing in the [J]ustice department." Rimmer Br. at 29–30. While it is true that the public has an interest in unearthing agency misconduct—indeed, as mentioned above, the Supreme Court has emphasized that the core purpose of FOIA is to "shed light on an agency's performance of its statutory duties," *Reporters Comm.*, 489 U.S. at 773—more than bare allegations of federal malfeasance are required before the public

interest becomes significant enough to overcome the privacy concerns embodied in Exemption 7(C), *Nat'l Archives*, 541 U.S. at 172.  The Supreme Court has indicated that for a public interest to be significant enough to tip the scales towards disclosure, a FOIA requester must, at a minimum, "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Ibid.*[5]

In addition, we note that FOIA is concerned only with shedding light on misconduct of the *federal* government, not *state* governments.  As numerous sister circuits have noted, "it is beyond question that FOIA applies only to federal and not to state agencies." *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 484 (2d Cir. 1999); *see also Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 83 (1st Cir. 1997) ("FOIA . . . applies only to federal executive branch agencies."); *Brown v. Kelly*, No. 93–5222, 1994 WL 36144, at *1 (D.C. Cir. Jan. 27, 1994) ( per curiam ) (holding that FOIA does not apply to state agencies); *St. Michael's Convalescent Hosp. v. California*, 643 F.2d 1369, 1373 (9th Cir. 1981) (stating that the definition of "agency" under FOIA "does not encompass state agencies or bodies"); *Johnson v. Wells*, 566 F.2d 1016, 1018 (5th Cir. 1978) (holding that the state board of parole was not an agency within the meaning of FOIA).  Accordingly, we agree with the Third Circuit that "just as there is no FOIA-recognized public interest in discovering evidence in federal government files of a private party's violation of the law, *see Reporters Comm.*, 489 U.S. at 774, there is no FOIA-recognized public interest in discovering wrongdoing by a *state* agency." *Landano v. U.S. Dep't of Justice*, 956 F.2d 422, 430 (3d Cir. 1992), *vacated on other grounds*, 508 U.S. 165 (1993).

---

[5]Rimmer cites this court's opinion in *Jones v. FBI*, 41 F.3d at 242–43, for the proposition that we should "include[] in the balance the issue of bad faith or illegality regarding the underlying activities which generated the documents." Rimmer Br. at 28.  To the extent that Rimmer is simply arguing for this court to treat the revelation of agency actions taken in bad faith as a "significant public purpose," we agree, as did the Supreme Court in *National Archives*.  But, to the extent that Rimmer reads *Jones* as holding that, in the presence of agency bad faith, the bar for disclosure of 7(C) material is somehow lower, we must disagree.  *Jones*'s discussion of agency bad faith was brought up in the context of whether the agency should be required to submit its records to the district court for an *in camera* review, *see supra* Section II.B, and had nothing to do with the actual applicability of the FOIA exemptions.  *Jones*, 41 F.3d at 242–43.  Given that the government willingly submitted the documents at issue to the district court—in fact, the government was the party that moved for *in camera* review—*Jones*'s discussion of bad faith is irrelevant in our case.

In this case, Rimmer argues that the FBI withheld and is still withholding exculpatory information relating to his conviction for Ellsworth's murder. It is true that, if the *federal* government had prosecuted Rimmer, it would have had an obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), to provide him with any exculpatory information in its possession. Here, however, the FBI declined to prosecute Rimmer, who was prosecuted by Tennessee only. Thus, while the *state* may have breached its *Brady* obligations by failing to provide Rimmer with evidence of Darnell's FBI interview and photo-lineup identification, Rimmer presents no evidence that the FBI had any similar obligation.

Nor does Rimmer provide evidence showing that the FBI somehow used its status as a joint investigator to shield exculpatory information from Rimmer. In fact, rather than segregate the evidence of Darnell's identification in its own files, the FBI turned over this evidence to the Memphis Police, thus ensuring that it would be subject to *Brady* in the event of a state prosecution. In short, Rimmer has produced no evidence "that would warrant a belief by a reasonable person that the alleged . . . impropriety [by the FBI] might have occurred," *Nat'l Archives*, 541 U.S. at 174, and thus has failed to allege a significant public interest that would warrant disclosure of the FBI's Exemption 7(C) redactions.

Even if Rimmer had made plausible allegations of FBI misconduct and thus established a significant public purpose, his FOIA challenge would fail, as he cannot show that the information he seeks would likely advance the public interest in revealing agency misconduct. During its *in camera* review, the district court determined that the FBI's contested 7(C) redactions covered only identifying information—a finding that is uncontested on appeal.[6] Before the district court, Rimmer claimed that he needed this information to "fully develop his factual proof on these claims in court proceedings."

---

[6]The district court did find that there were "a handful of places" where redactions were made in reliance on Exemption 7(C) in which the information was not "facially 'identifying.'" *Rimmer v. Holder*, No. 3:10-1106, 2011 WL 4431828, at *8 (M.D. Tenn. Sept. 22, 2011). It stated that these redactions still fit under Exemption 7(C) because the information they shielded could, "if certain connections between individuals were made," identify "particular individuals who provided information to law enforcement." *Ibid.* Rimmer has not contested this specific finding on appeal.

Rimmer Resp. to Gov't's Redactions at 6. Yet in the same breath, he admitted that he had "obtained numerous documents through open records acts which identify most, if not all, of the state law enforcement officers involved in his case" and that he was "aware of the Assistant United States Attorneys who represented the government in the joint investigation and intended prosecution." *Id*. at 6–7. Nevertheless, Rimmer claimed that he did not know exactly "who in the FBI investigated [Ellsworth's] disappearance" and thus "need[ed] un-redacted documents in order to fully investigate." *Id*. at 7.

At bottom, even if a significant public interest were actually to exist, the information Rimmer seeks does not serve that interest. Rimmer acknowledges that he is already in possession of most of the information that he now seeks. Even in the few isolated instances where Rimmer might not know exactly to whom a redaction referred, exposure of this information would not help the public to discern whether the FBI was acting corruptly. There is no redaction of material describing FBI efforts to hide information, an FBI plan to "game" the joint investigation so as to sequester information within the non-prosecuting agency, or any other actual action taken by the FBI; all that exists is the deletion of information that would identify those who were mentioned in the Ellsworth investigation file. As the district court put it:

> [W]hat is redacted is names and identifying information, primarily of those who provided information to the police during the underlying investigation. The Government is not, for instance, attempting to withhold material that indicates which documents were (or were not) timely disclosed to the defendant or that indicates that a witness perjured himself at trial. In short, the plaintiff . . . has not connected [any public] interests to the material actually redacted.

*Rimmer v. Holder*, No. 3:10-1106, 2011 WL 4431828, at *7 n.8 (M.D. Tenn. Sept. 22, 2011).

Rimmer also cites *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1176 (D.C. Cir. 2011), for the proposition that when conducting the Exemption 7(C) balancing test, some sort of "heightened scrutiny," perhaps a thumb on the scale toward a defendant, is "warranted in a capital murder case in which the government possesses information suggesting a possible wrongful conviction and death sentence." Rimmer Br. at 31. But

*Roth* is inapposite, as it dealt with review of the FBI's use of a *Glomar* response—an answer that declines to indicate whether law enforcement records relating to the individuals specified in a FOIA request even exist[7]—rather than its use of a FOIA exemption to merely redact content. *Roth*, 642 F.3d at 1166. The *Roth* court did not review the FBI's use of FOIA exemptions to protect content from disclosure once the existence of records had been confirmed, and the *Roth* court even noted that once the FBI disclosed whether records actually existed, the content of those records might "well fall within one or more FOIA exemptions." *Id*. at 1182.

In conclusion, the district court correctly upheld the FBI's Exemption 7(C) redactions, as well as the Exemption 6 redactions with which they were appropriately grouped.

**E**

Turning to the FBI's relatively few invocations of Exemption 7(D), which protects information that "could reasonably be expected to disclose the identity of a confidential source," 5 U.S.C. § 522(b)(7)(D), the district court found that Rimmer provided "little challenge" to these redactions other than to assert that "through other investigation, he has become aware of the names of the individuals that the [FBI sought] to protect through redaction," *Rimmer v. Holder*, No. 3:10-1106, 2011 WL 4431828, at *5 n.5 (M.D. Tenn. Sept. 22, 2011). Having reviewed Rimmer's filings in the district court, we agree.

In this case, the confidential sources that the FBI redacted under 7(D) were individuals who had called a confidential Crime Stoppers hotline to provide information relating to the Ellsworth investigation. While Rimmer never expressly mentioned Exemption 7(D) or the redactions made thereunder, he did at least refer to "confidential sources," arguing that "concerns about the personal privacy of 'confidential sources' are not present since Plaintiff, through his investigation, already knows the identity of most,

---

[7]*See generally Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 67–68 (2d Cir. 2009) (explaining the historical origin and analytical framework of the *Glomar* doctrine).

if not all, the redacted names which would fall into this category and many of them testified at trial." Rimmer Resp. to Gov't's Redactions at 2.

On appeal, Rimmer does not press this argument and makes no express reference to the Exemption 7(D) redactions, instead focusing his efforts on the balancing test applicable to Exemption 7(C). Nonetheless, we note that the district court correctly dispensed with Rimmer's claim that his personal knowledge of the identity of most of the government's confidential sources neutralized the personal-privacy protection afforded them under Exemption 7(D). In this circuit, it is well-settled that "[i]f a confidential source is later revealed, we nonetheless restrict public access to documents under [Exemption 7(D)] so long as the informant and the agency intended the identity of the source to remain undisclosed at the time the agency compiled the information." *Rugiero*, 257 F.3d at 551. As it is undisputed that both the FBI and the individuals calling the Crime Stoppers hotline intended that the callers' identities remain undisclosed at the time of the calls, Rimmer's argument, even if it were reasserted, fails.

## III

Rimmer also argues that the APA affords him a separate avenue to attack the FBI's refusal to provide him with unredacted records. The district court dismissed Rimmer's APA claim, holding that it was barred by § 704 of the APA. We review the district court's dismissal of an action for lack of jurisdiction *de novo*. *Haio v. INS*, 199 F.3d 302, 304 (6th Cir. 1999).

On appeal, Rimmer claims that "[t]he combined effect of the district court's dismissal of [his] APA and mandamus claim and summary judgment for the government in the FOIA claim" is to deprive him of "exculpatory evidence" contrary to notions of "due process, and [the right] to be free from cruel and unusual punishment." Rimmer Br. at 23. Essentially, Rimmer argues that because he cannot obtain unredacted copies of the requested documents through FOIA, "due process" and his right "to be free from cruel and unusual punishment," *ibid.*, should permit him to acquire the redacted information either via an APA claim or a writ of mandamus.

Section 704, on which the district court relied to dismiss Rimmer's APA claim, limits the federal government's waiver of sovereign immunity and the attendant review of agency actions under the APA to situations in which there is "no other adequate remedy in a court."  5 U.S.C. § 704; *see also Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997) (holding that "the APA does not express the U.S. government's consent to suit if an alternate adequate remedy is available to review a final agency action").  Rimmer argues that the district court's ruling against his FOIA request demonstrates that FOIA did not provide him with an alternate adequate remedy.  Rimmer Br. at 25.

Rimmer's argument is misplaced, however, and is premised on a misunderstanding of the term "adequate remedy."  Adequacy does not depend on a party's ability to prevail on the merits—if it did, every party that lost a non-APA-based appeal of an agency decision would be entitled to a duplicative APA claim, precisely the outcome that § 704 seeks to prevent.  As other courts have noted, for a cause of action to provide an adequate remedy in the § 704 context, a court need only be able to provide "relief of the same genre" to the party seeking redress, but not necessarily "relief identical to relief under the APA."  *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (internal quotation marks omitted).  Furthermore, relief will be deemed adequate "where a statute affords an opportunity for *de novo* district-court review of the agency action."  *Id*. at 522–23 (internal quotation marks omitted).

In this case, the district court's ability to conduct a *de novo* review of Rimmer's FOIA request and, if it were to rule in Rimmer's favor, to order relief identical to that provided under the APA, *i.e.*, production of the unredacted documents Rimmer seeks, clearly provides an alternate adequate remedy in court and thus triggers § 704's bar on claims brought under the APA.  Several sister circuits have reached a similar conclusion, *see Central Platte Natural Res. Dist. v. USDA*, 643 F.3d 1142, 1148 (8th Cir. 2011); *Walsh v. Dep't of Veterans Affairs*, 400 F.3d 535, 537–38 (7th Cir. 2005), and we now expressly join their ranks.

This outcome is especially appropriate because Rimmer could have obtained review under the APA rather than FOIA if, instead of seeking the documents at issue

through FOIA channels, he had pursued a *Touhy* request, a common tool for obtaining federal documents during state-court discovery. The District of Columbia Circuit explained the longstanding *Touhy* framework as follows:

> When a litigant seeks to obtain documents from a non-party federal governmental agency, the procedure varies depending on whether the underlying litigation is in federal or in state court. In state court the federal government is shielded by sovereign immunity, which prevents the state court from enforcing a subpoena. . . . Moreover, a court cannot enforce a subpoena against an employee of the federal governmental agency when the agency has validly enacted a regulation . . . that withdraws from employees the power to produce documents. . . . Thus, a state-court litigant must request the documents from the federal agency pursuant to the agency's [*Touhy*] regulations . . . . If the agency refuses to produce the requested documents, the sole remedy for the state-court litigant is to file a collateral action in federal court *under the APA*.

*Houston Bus. Journal, Inc. v. Office of the Comptroller of the Currency*, 86 F.3d 1208, 1211–12 (D.C. Cir. 1996) (emphasis added). The Justice Department, pursuant to 5 U.S.C. § 301, commonly known as the "Housekeeping Statute," has adopted *Touhy* regulations restricting the ability of department employees to produce documents, *see* 28 C.F.R. § 16.22(a), and also outlining the procedures one must follow to request documents and the factors officials should consider in determining whether to release them, *see* 28 C.F.R. §§ 16.24–16.29; *see also United States v. Williams*, 170 F.3d 431, 433 (4th Cir. 1999) (explaining these regulations and the need to follow them when seeking information from the Department of Justice). Had Rimmer, rather than employing FOIA, made a *Touhy* request pursuant to these regulations and been denied, he would now be able to seek precisely the remedy he now demands: review under the APA. In fact, the government conceded at oral argument that if he so desires, Rimmer is still able to submit a *Touhy* request and pursue the information at issue through this route. At this time, however, Rimmer has completely neglected the *Touhy* framework.[8]

---

[8]Rimmer also argues that Tennessee Assistant District Attorney General John Campbell's offer during the Tennessee post-conviction proceedings to negotiate with the FBI for production of the documents at issue excuses his failure to make a *Touhy* request. Rimmer Reply Br. at 4–5. Rimmer seems to allege that the federal government made some sort of "promise" to cooperate with the state prosecutor, *id*. at 7, and that, given this promise, it can no longer "renege[]" and require him to make a "futile, redundant *Touhy* request," *id*. at 5. Yet the record suggests only that Assistant United States Attorney Tony Arvin was present in the courtroom when the Tennessee state court approved Campbell's proposal

The cases that Rimmer cites to support his request for an APA remedy actually buttress our observation that, absent a *Touhy* request, Rimmer cannot point to a final agency action that warrants APA review. In *Williams*, 170 F.3d at 434, the Fourth Circuit did indeed hold that a state criminal defendant "may assert his constitutional claim to the investigative information before the district court, which possesses authority *under the APA* to compel the law enforcement agency to produce the requested information in appropriate cases," but only if that defendant was "aggrieved by the response of a federal law enforcement agency made *under its regulations*." (emphasis added). In other words, APA review was available only if the criminal defendant made a *Touhy* request pursuant to an agency's *Touhy* regulations. The Fourth Circuit reached this conclusion even though the defendant argued "that he need not have complied with the Justice Department's regulations, because the FBI was assisting state authorities in their investigation of the state crimes for which he was ultimately indicted"—the exact same situation in which Rimmer currently finds himself. *Ibid*.

Similarly, another case Rimmer cites, *In re Boeh*, 25 F.3d 761, 767 (9th Cir. 1994), held that an APA claim was the proper method for challenging an agency's refusal to produce information, but only in reference to the Department of Justice's denial of a *Touhy* request. And in Rimmer's final case, *Johnson v. Reno*, 92 F. Supp. 2d 993, (N.D. Cal. 2000), the district court cited both *Williams* and *Boeh* only for the proposition that an APA claim was the appropriate vehicle for challenging an agency's denial of a request for information "'made under its regulations.'" *Ibid*. (quoting *Williams*, 170 F.3d at 434). While the terse opinion in *Johnson* does not reveal whether the plaintiff in that case was seeking information through a *Touhy* request, the court's

---

to negotiate with the federal government and that soon after, Campbell contacted Arvin to negotiate the release of Rimmer's file. After their discussion, Arvin contacted the FBI to inquire about retrieval of the documents at issue and their potential release to Rimmer, but a few months later, Arvin, along with FBI Special Agent David Lee, again met with Campbell, at which time Lee stated that the FBI would not release the relevant file to the State. There is no indication in the record of whether Lee or another individual higher up the FBI's chain of command made this determination. That said, there is nothing to suggest that the government either made or broke any kind of "promise" or that Rimmer's making a *Touhy* request at this stage in the litigation would be "futile." In fact, at oral argument the government specifically conceded that Rimmer could pursue such a request. And because, after oral argument, the Tennessee courts overturned Rimmer's conviction and granted him a new trial, a *Touhy* request seems even more practical at this time.

citation to *Williams* and *Boeh* would support this conclusion. In any event, it is clear that the district court in *Johnson* was not using the APA to review the denial of a *FOIA request*. And to the extent that *Johnson* could be read as allowing an independent APA claim to compel an agency to produce information without first submitting a *Touhy* request, we find it unpersuasive.

In short, *Williams* and *Boeh* did not hold that the APA provided a stand-alone remedy to compel the production of information held by the government. Rather, they addressed situations in which APA review was applied to a *Touhy* request. The *Johnson* court seems likely to have reached the same conclusion, though the ambiguity in its posture prevents us from knowing for certain whether a *Touhy* request was involved. Accordingly, we hold that these precedents provide no authority for the proposition that, absent a *Touhy* request, the APA creates an independent avenue for reviewing an agency's denial of a request for information. The district court properly found that FOIA provided Rimmer with an adequate remedy in court, and thus Rimmer's APA claim is barred by 5 U.S.C. § 704.

**IV**

Finally, Rimmer argues that he should be able to seek unredacted versions of the FBI's documents by petitioning for a writ of mandamus. The district court dismissed Rimmer's mandamus claim, holding that it was barred by our circuit's three-part test that requires, *inter alia*, that the party seeking mandamus has no other adequate remedy available. As with Rimmer's APA claim, we review the district court's dismissal of an action for lack of jurisdiction *de novo*. *Haio*, 199 F.3d at 304.

On appeal, Rimmer does not address the district court's finding that an adequate remedy is available to him, instead focusing only on his assertion that "the government [has] a clear ethical and constitutional duty to act in this case." Rimmer Br. at 25. But our case law clearly indicates that "[m]andamus is available only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Carson*, 633 F.3d at 491 (internal quotation marks omitted). As discussed with reference to Rimmer's APA claim, *see supra* Part

III, not only does FOIA provide Rimmer with an adequate remedy to seek unredacted production of the documents at issue, but so does the *Touhy* framework, should Rimmer choose it pursue it. As Rimmer offers no argument to suggest otherwise, his mandamus claim fails the aforementioned three-part test.

**V**

Rimmer's FOIA appeal was properly denied, as the redacted information he seeks is protected by FOIA Exemption 7(C) or 7(D). Rimmer's APA and mandamus claims are precluded by the existence of an alternate adequate remedy and thus were properly dismissed. For the forgoing reasons, we AFFIRM the judgment of the district court.