# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00136-CV

**The City of Austin, Chief Brian Manley, and the Austin Police Department, Appellants**

**v.**

**Jane Doe, Appellee**

### FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-007388, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

## MEMORANDUM OPINION

The City of Austin, the Austin Police Department (APD), and APD Chief Brian Manley (collectively, the City) appeal the trial court's order denying their plea to the jurisdiction. Appellee, Jane Doe, individually and on behalf of all others similarly situated, sued appellants for declaratory and injunctive relief related to their publication of booking photos (a.k.a. "mug shots") on APD's website. For the following reasons, we will affirm in part the trial court's order as to Doe's ultra vires claim but reverse the order as to her remaining claims and render judgment dismissing those claims.

## BACKGROUND

In her live petition, Doe—a fifty-one-year-old "wife, mother, professional and private citizen [who] has never been convicted of a crime"—alleges that she was recently arrested in Austin and accused of driving while intoxicated (DWI), a misdemeanor charge she denies. After Doe was transported to the Travis County Jail, a sheriff's deputy told her that a

booking photo would be taken, but she objected to being photographed "on the grounds that the booking photo would likely be posted on the internet and introduced into the public domain in violation of her right to privacy and right to due process." The deputy explained that the photo was being taken "solely to confirm [her] identity for internal law enforcement purposes and that if [she] did not submit [to having her photo taken] she would be sent to a holding cell until she acquiesced." After the photo was taken and upon Doe's release from jail, the deputy instructed her to inform APD that she "did not consent to the public release" of the booking photo.

Doe alleges that the APD maintains a policy—"authored, adopted, and enforced by" Chief Manley—declaring that "[m]ug shots of adult arrestees are subject to public release unless the release would interfere with law enforcement interests or hinder investigative efforts . . . [and, the mug shots] are publicly released automatically through the online APD Booking Photo Database Search 13 days after date of arrest." The policy is identified as APD General Order 326.4 (GO 326.4), and Doe appended a copy of it to her petition. Doe alleges that the policy "also excepts from disclosure information considered 'restricted' including 'criminal history information' and 'any information that is otherwise privileged or restricted under state or federal law.'"

Doe complains that the APD posts photos on its mug-shot website continuously for thirteen days from original release date "without regard to whether an individual has received due process for the crime of which the individual is accused or whether the crime is a felony, misdemeanor, violent or non-violent offense, or whether the accused is a fugitive from justice." Further, she contends that the website's search function permits searches for booking photos based on name, booking number, booking date, and charges; that photos can be "exported" without restriction, including the ability to print and download them onto personal computers

2

where they can be manipulated, changed, and distributed; and that when the photo is downloaded, it contains no date identifying when it was taken or for what type of offense or whether the arrestee was charged or exonerated or whether the case was dismissed.

Following her release from jail and before the mug shot was published on the APD website, Doe provided the City with written notice that she did not consent to the release or publication of her booking photo, citing the common-law doctrine of privacy and confidentiality under the Texas Public Information Act (PIA). She also requested that the City obtain an opinion from the Texas Attorney General regarding interpretation of the PIA's provisions concerning APD's planned release of the photo. The City responded that it would publish the photo on the website despite Doe's objections.

Doe immediately filed an original petition and motion for temporary restraining order and temporary injunction (TI) seeking to prohibit the City from releasing and publishing the photo. Shortly thereafter, the City and Doe executed a Rule 11 agreement prohibiting the release and publication of Doe's booking photo on the APD mug-shot website until the trial court heard and ruled on the motion for TI. In her live petition, Doe asserts causes of action for violation of her common-law right to privacy and violation of the PIA; seeks declarations under the Uniform Declaratory Judgments Act (UDJA), including that GO 326.4 is invalid; and contends that Chief Manley's posting of the photos on the APD website constitutes an ultra vires act. The City filed a plea to the jurisdiction, which the trial court heard contemporaneously with Doe's motion for TI. The trial court granted the TI and denied the plea to the jurisdiction. This appeal ensued. *See* Tex. Civ. Prac. & Rem. Code § 51.014.

3

**DISCUSSION**

In its plea to the jurisdiction, the City contended that (1) it enjoys governmental immunity from Doe's cause of action for common-law invasion of privacy, an intentional tort, for which the Texas Tort Claims Act (TTCA) does not waive immunity; (2) Doe's claims under the UDJA seek merely an interpretation of the PIA, a claim for which the UDJA does not waive immunity, and the PIA does not waive its immunity under the facts alleged; and (3) Doe's ultra vires claim against Chief Manley is not viable because she is complaining solely about acts within the exercise of his official discretion.[1] We review the trial court's ruling on the plea to the jurisdiction de novo. *See Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 929 (Tex. 2010); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).

***Does the City enjoy governmental immunity from Doe's claims?***

A city, as a political subdivision of the state, is immune from suit and liability unless the state consents. *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014). Governmental immunity defeats a court's jurisdiction. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). Where a government entity challenges jurisdiction on the basis of immunity, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015). To determine if the plaintiff has met that burden, we consider the facts the plaintiff has alleged and, to the extent it is relevant to the jurisdictional issue, the evidence the parties have submitted. *Whitley*, 104 S.W.3d at 542.

---

[1] In its plea, the City also challenged the constitutional claims that Doe made in her earlier petitions, but she removed those claims in her second amended (live) petition, so the City does not raise its issues as to those claims on appeal.

However, as Doe argues in her brief, a city has no immunity of its own but is only afforded the state's immunity when it is acting as the state's agent and performing governmental functions for public benefit. *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 433 (Tex. 2016) ("[A] city is not a freestanding sovereign with its own inherent immunity."); *see also Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 746 (Tex. 2019) ("Political subdivisions of the state—such as counties, cities, and school districts—are not sovereign entities, but under the governmental-immunity doctrine, they share the state's immunity when performing governmental functions as the state's agent."). Political subdivisions are immune from suit for acts performed as a branch of the state but not for those acts performed in a proprietary, non-governmental capacity. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006). While the "proprietary-governmental dichotomy" is not a "clear one," "generally speaking, a municipality's proprietary functions are those conducted 'in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government,' while its governmental functions are 'in the performance of purely governmental matters solely for the public benefit.'" *Id.* (quoting *Dilley v. City of Houston*, 222 S.W.2d 992, 993 (Tex. 1949)). "Acts that are proprietary in nature, therefore, are not done as a branch of the state, but instead for 'the private advantage and benefit of the locality and its inhabitants.'" *Wasson*, 489 S.W.3d at 433 (quoting *City of Galveston v. Posnainsky*, 62 Tex. 118, 127 (1884)).

"Because governmental immunity extends 'as far as the state's [immunity] but no further,' no immunity exists for acts performed in a proprietary, non-governmental capacity." *Rosenberg Dev.*, 571 S.W.3d at 746–47 (quoting *Wasson*, 489 S.W.3d at 433–34). "Like *ultra vires* acts, acts performed as part of a city's proprietary function do not implicate the state's immunity for the simple reason that they are not performed under the authority, or for the benefit,

5

of the sovereign." *Wasson*, 489 S.W.3d at 434. As a common-law doctrine, the judiciary determines whether immunity exists "in the first instance and delineates its boundaries." *Id.* at 435. "If immunity is applicable, *then* the judiciary defers to the legislature to waive such immunity." *Id.* We thus consider whether APD's posting of booking photos on its mug-shot website constitutes a proprietary or governmental function to determine whether the City enjoys governmental immunity in the first instance.

The Texas Supreme Court has explained that when the legislature has statutorily defined a particular activity as a governmental function in the TTCA, there is "no reason to think that the classification would be different under the common law." *Tooke*, 197 S.W.3d at 343–44 (holding that plaintiffs' contract with city to provide curbside leaf and brush collection within city was encompassed by TTCA's inclusion of "garbage and solid waste removal, collection, and disposal" on list of municipalities' governmental functions). Thus, as our sister court has determined, we "need not consider classification of an activity under common law if the activity is defined by statute." *Martinez v. City of San Antonio*, 220 S.W.3d 10, 14 (Tex. App.—San Antonio 2006, no pet.). The TTCA expressly categorizes "police and fire protection and control" as a governmental function. Tex. Civ. Prac. & Rem. Code § 101.0215(a)(1). Therefore, if the action that Doe challenges falls within the category of "police protection and control," then it is a governmental function for which the City enjoys governmental immunity. *See Martinez*, 220 S.W.3d at 14.

Doe concedes that police protection and control generally—and even the release of "basic information related to herself or her arrest"—are "law enforcement actions authorized and mandated by state law" and thus constitute governmental functions. However, she attempts to distinguish the City's posting of the booking photos on the APD website from general police

6

protection and control by framing the conduct as being in violation of state law (i.e., of her common-law right to privacy and of the PIA). Her argument, it appears, is that because the posting of booking photos purportedly violates her right to privacy and the PIA, it cannot, as a matter of law, constitute a governmental function. However, she does not cite any authority to support this argument, and we conclude that determination of this issue turns not on whether the challenged activity violates law but rather on whether the activity can reasonably be construed as police protection and control.

Our sister court in *Martinez* determined that a comprehensive program implemented and administered by a city police department to prevent and reduce crime constituted a governmental function even though, as the plaintiff contended, certain aspects of the program were proprietary in nature, such as providing counseling and job-training services to local residents to prevent and suppress gang activity and crime. *See id.* at 15–16. Citing to one of its prior opinions, the *Martinez* court held that a plaintiff "may not split various aspects of a [municipality's] operation into discrete functions and recharacterize certain of those functions as proprietary." *Id.* at 15 (quoting *City of San Antonio v. Butler*, 131 S.W.3d 170, 178 (Tex. App.—San Antonio 2004, pet. denied) (holding that city's contracting with vendor to sell alcohol at Alamodome was "logically characterized as part of the operation of the facility and must be considered a government function" in light of TTCA's inclusion of "civic, convention centers, or coliseums" in list of governmental functions)); *see also Mitchell v. City of Dallas*, 855 S.W.2d 741, 744 (Tex. App.—Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex. 1994) (refusing to consider that some activities related to operation of city park, such as design and construction of erosion-control walls along creek with allegedly dangerous drop-offs lacking adequate warnings or barriers, might be proprietary where TTCA lists "parks and zoos" as governmental function).

7

Similarly, we conclude that Doe may not characterize part of the City's policy of releasing information to the public as a proprietary function—that pertaining to booking photos—and the rest of its policy—that pertaining to the release of "basic information" related to one's arrest—as a governmental function, regardless of its alleged illegality. We therefore hold that the City's posting of the booking photos on the APD website constitutes a governmental function for which the City enjoys governmental immunity absent an applicable legislative waiver of immunity. *See Tooke*, 197 S.W.3d at 343–44; *Martinez*, 220 S.W.3d at 15–16. Doe contends that the PIA and the UDJA waive the City's immunity under the facts alleged.[2]

### Does the PIA waive the City's immunity?

Doe contends that the PIA waives the City's immunity because she is "seeking to withhold information from a requestor." *See* Tex. Gov't Code § 552.325(a) ("A governmental body, officer for public information, or other person or entity that files a suit seeking to withhold information from a requestor may not file suit against the person requesting the information."). Importantly, however, she does not identify any "requestor," and the PIA section she cites clearly contemplates suits brought *by governmental bodies* (or their agents) *for their own efforts* to withhold information *from a specific request* for public information. *See id.* §§ 552.325(b) ("The governmental body, officer for public information, or other person or entity that files the suit shall demonstrate to the court that the governmental body, officer for public information, or other person or entity made a timely good faith effort to inform the requestor . . . of . . . the

---

[2] Doe does not contend that the TTCA waives the City's immunity, as it is settled law that the TTCA does not waive immunity for intentional torts, which the invasion of privacy is. *See* Tex. Civ. Prac. & Rem. Code § 101.057 (providing that TTCA's waiver of immunity does not apply to claim "arising out of assault, battery, false imprisonment, or any other intentional tort"); *Billings v. Atkinson*, 489 S.W.2d 858, 860–61 (Tex. 1973) ("[T]he invasion of privacy is a willful tort which constitutes a legal injury.").

existence of the suit . . . , the requestor's right to intervene . . . , [and] that the suit is against the attorney general . . . "), .324(a) ("The only suit a governmental body may file seeking to withhold information from a requestor is a suit that: (1) is filed in a Travis County district court against the attorney general in accordance with Section 552.325; and (2) seeks declaratory relief from compliance with a decision by the attorney general issued under Subchapter G."). Other than section 552.325, Doe does not identify any other section of the PIA that purportedly waives the City's immunity from suit, and we have found none. Accordingly, we conclude that the trial court was without jurisdiction over Doe's PIA claim.

### Does the UDJA waive the City's immunity?

It is settled law that the UDJA does not grant a trial court subject-matter jurisdiction but is "merely a procedural device for deciding cases already within a court's jurisdiction." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *see McLane Co. v. Texas Alcoholic Beverage Comm'n*, 514 S.W.3d 871, 875 (Tex. App.—Austin 2017, pet. denied). The UDJA provides only a limited waiver of immunity when a plaintiff challenges the validity of a statute or ordinance. *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633–35 (Tex. 2010). It does not waive the state's or governmental body's immunity when a plaintiff seeks a declaration of her rights under a statute or other law. *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011). Because Doe is not challenging the validity of any statute or ordinance, we conclude that the trial court did not have subject-matter jurisdiction over her UDJA claim. *See id.*; *City of Dallas v. Sabine River Auth.*, No. 03-15-00371-CV, 2017 WL 2536882, at *4 (Tex. App.—Austin June 7, 2017, no pet.) (mem. op.).

*Has Doe alleged a viable ultra vires claim against Chief Manley?*

While governmental immunity generally bars suit against Chief Manley as an agent of the City, it does not bar suit against him in his official capacity for acting outside of his authority, that is, for ultra vires conduct. *See Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016). However, if a plaintiff alleges only facts demonstrating acts within the officer's legal authority and discretion, the claim seeks to control state action and is barred by governmental immunity. *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 516 (Tex. App.—Austin 2010, no pet.). To determine if a plaintiff has pleaded a viable ultra vires action, the court must construe relevant statutory provisions that define the scope of the governmental body's legal authority, apply those statutes to the facts as pleaded by the plaintiff, and ascertain whether those facts constitute acts beyond the agency's legal authority. *City of New Braunfels v. Tovar*, 463 S.W.3d 913, 919 (Tex. App.— Austin 2015, no pet.). When, as here, the plea to the jurisdiction challenges the sufficiency of the pleadings rather than the existence of any of the jurisdictional facts alleged by the plaintiff, the court should make the jurisdictional determination as a matter of law based solely on the facts alleged by the plaintiff, which are taken as true and construed liberally in favor of jurisdiction. *Prewett v. Canyon Lake Island Prop. Owners Ass'n*, No. 03-18-00665-CV, 2019 WL 6974993, at *1 (Tex. App.—Austin Dec. 20, 2019, no pet.) (mem. op.) (citing *Miranda*, 133 S.W.3d at 225, 227).

Doe alleges that Chief Manley is acting ultra vires by voluntarily making public the booking photos, which she contends are confidential, in violation of the PIA. *See* Tex. Gov't Code §§ 552.007(a) ("This chapter does not prohibit a governmental body or its officer for

10

public information from voluntarily making part or all of its information available to the public, *unless* the disclosure is expressly prohibited by law or *the information is confidential under law*." (emphases added)), .101 (excepting from PIA's disclosure requirements "information considered to be confidential by law, either constitutional, statutory, or by judicial decision"); *see also id.* § 552.002 (broadly defining "public information"). Based on the plain language of section 552.007, if the booking photos are confidential, then Chief Manley's voluntary disclosure of them by posting them on the website would constitute an ultra vires act because he has no authority under the PIA to disclose confidential information; the act expressly prohibits the release of confidential information. *See id.* § 552.007(a); *Houston Belt & Terminal Ry.*, 487 S.W.3d at 163 ("when an officer acts beyond his granted discretion—in other words, when he acts without legal authority—his acts are not protected"). Only when a government officer has "absolute discretion"—that is, free decision-making power without any constraints—is an ultra vires suit barred. *Houston Belt & Terminal Ry.*, 487 S.W.3d at 163. And, as a general rule, "a public officer has no discretion or authority to misinterpret the law." *Id.* (quoting *In re Smith*, 333 S.W.3d 582, 585 (Tex. 2011) (orig. proceeding)).

The City contends, as outlined in its plea to the jurisdiction, that Chief Manley has the discretion to determine whether booking photos are public or confidential because he has the "authority to interpret" the PIA and that Doe is merely complaining that he "misinterpreted" the PIA, for which an ultra vires claim does not exist. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) ("To fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."). However, the City points to no statute providing Chief Manley any discretion to determine what constitutes

11

"confidential" information under the PIA, nor have we have found any, and the case law the City cites as support is distinguishable. *Cf. Hall v. McRaven*, 508 S.W.3d 232, 234 (Tex. 2017) (holding that ultra vires claim did not lie against university chancellor, to whom express authority was given by applicable rules, promulgated pursuant to Education Code, to interpret whether federal privacy laws required redaction of otherwise public information). Unlike in *Hall*, Chief Manley has not been expressly authorized by statute or rules promulgated thereunder to interpret whether information is "confidential" under the PIA. Therefore, if Chief Manley is posting booking photos on the APD website and threatening to post Doe's booking photos, and if the photos are confidential under the PIA, his act of posting them is ultra vires, and Doe has alleged a viable claim.

In her petition, Doe alleges that

> [t]he unrestricted access to plaintiff's booking photo would be highly objectionable to [p]laintiff, who is a reasonable person, because it was taken without her consent, and over her objection to its public disclosure, and it contains a highly embarrassing depiction of her personal likeness, appearance, facial expression, and her vulnerability while being booked into jail after being accused of committing a criminal act—of which she claims she is innocent—after she was taken into police custody and deprived of her liberties, and when released to the public intimates guilt. Plaintiff further asserts that the public has no legitimate public interest in accessing her booking photo. She is not, for example, a governmental official, habitual offender or fugitive from justice. Consequently, the unrestricted public access and/or publication on the internet of her booking photo would be an unwarranted invasion of her personal privacy.

The PIA defines "confidential information" as information "considered to be confidential by law, either constitutional, statutory, or by judicial decision." Tex. Gov't Code § 552.101. While neither the constitution nor any statute deems booking photos confidential, the Texas Supreme Court has determined that if release of information to the general public would invade a person's common-law right to privacy, then that information "should be deemed confidential by judicial

12

decision" under the PIA. *Industrial Found. of the S. v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 683 (Tex. 1976). The court in *Industrial Foundation* outlined two requirements for whether particular information is "private" and thus confidential under the PIA: (1) it contains "highly intimate or embarrassing facts about a person's private affairs, such that its publication would be highly objectionable to a person of ordinary sensibilities," and (2) it is not "of legitimate concern to the public." *Id.* at 683–85. "If the information meets the first test, it will be presumed that the information is not of legitimate public concern unless the requestor can show that, under the particular circumstances of the case, the public has a legitimate interest in the information notwithstanding its private nature." *Id.* at 685.

Whether information at issue meets the first test is generally a fact issue to be determined by the factfinder. *See id.* at 683, 685–86 (deciding that affidavit raised fact issue concerning privacy doctrine when it alleged that claims filed with industrial-accident board contained information about private matters that would cause extreme embarrassment to injured claimant); *see also Adkisson v. Paxton*, 459 S.W.3d 761, 778 (Tex. App.—Austin 2015, no pet.) ("It was the Commissioner's burden to raise a fact issue precluding release of the [subject] documents. Without any evidence to support the Commissioner's claim that the requested information is protected by the common-law privacy doctrine, he has not carried his summary-judgment burden to show that the information is excepted from disclosure under PIA Section 552.101."); *Austin Chron. Corp. v. City of Austin*, No. 03-08-00596-CV, 2009 WL 483232, at *6–7 (Tex. App.—Austin Feb. 24, 2009, no pet.) (mem. op.) (holding that evidence was legally insufficient to support trial court's fact findings that police report was private and contained highly intimate or embarrassing facts where evidence was undisputed that report had already been made public).

13

As already noted, the City did not challenge the existence of jurisdictional facts supporting Doe's ultra vires claim but merely argued that the facts alleged in her petition and the applicable law demonstrate that Chief Manley's publication of the booking photos on the APD website is not ultra vires because he has the authority to determine whether booking photos are confidential under the PIA, which argument we have already rejected. Therefore, taking Doe's factual allegations as true, as we must do, we conclude that she has alleged a viable ultra vires claim against Chief Manley, *see Miranda*, 133 S.W.3d at 227, and whether the booking photos are confidential is a merits determination on which we defer to the trial court to make in the first instance. We also note that, while Doe presented some evidence to support her request for a TI,[3] without a challenge by the City of the jurisdictional facts supporting her claim, Doe neither had the opportunity to fully develop the record on the fact question of whether her booking photos are confidential under the *Industrial Foundation* test, nor was she required to. *See Miranda*, 133 S.W.3d at 227; *cf. Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (noting TI's purpose is to preserve status quo of litigation's subject matter pending trial on merits and that to obtain TI, applicant must plead and prove "(1) a cause of action against defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim"). We conclude, therefore, that Doe pleaded facts sufficient to affirmatively demonstrate that the trial court has jurisdiction over her ultra vires claim alleging that Chief Manley acted without legal authority in voluntarily posting the booking photos at issue on the APD website.

---

[3] Besides her own testimony, Doe called as witnesses a local criminal lawyer and the APD records manager. While the trial court admitted some exhibits, including booking photos of other individuals that APD had posted on its website, neither Doe nor the City sought to admit the booking photos of Doe herself.

14

Moreover, we note that—despite the City's contention that "booking photos have never been held by the attorney general or a court in Texas to be 'confidential under law'"—the absence of a prior on-point judicial determination about the confidentiality of the booking photos at issue does not foreclose the possibility of such a determination in this case. *See Industrial Found.*, 540 S.W.2d at 683 ("[I]f a governmental unit's action in making its records available to the general public would be an invasion of an individual's freedom from the publicizing of his private affairs, then the information in those records should be deemed confidential by judicial decision."); *see also* Tex. Gov't Code § 552.101 (information is "confidential" if it has been so deemed by judicial decision). The City cites two attorney general opinions to support its argument. *See* Tex. Att'y Gen. OR2016-22153 (cursorily determining that particular requested booking photos did not meet *Industrial Foundation* test for confidentiality); Tex. Att'y Gen. ORD-616 (1993) (determining that mug shot "taken in connection with an individual's arrest for an offense for which he was subsequently convicted and is currently serving time" is not intimate or embarrassing). However, those opinions are not binding on this Court. *Austin Chron.*, 2009 WL 483232, at *6. Furthermore, ORD-616 is distinguishable because the individual whose photo was at issue had already been convicted of the offense, and OR2016-22153 does not specify any details about the particular mug shots at issue, offenses for which the individuals were arrested, or whether they were convicted.

We also conclude that the case from this Court that the City cites, *City of Carrollton v. Paxton*, is distinguishable both because it turned primarily on the fact that the individual at issue had been convicted of the crimes whose allegations were the basis for the arrest and because the party asserting that the mug shot at issue was confidential (there, the City of Carrollton) had merely asserted that a mug shot "categorically satisfies the common-law

15

privacy standard" without, apparently, presenting any evidence on the issue. *See* No. 03-13-00838-CV, 2016 WL 1566400, at \*3 (Tex. App.—Austin Apr. 14, 2016, no pet.) (mem. op.). In contrast, Doe cites several recent federal cases analyzing the issue and determining that arrestees generally have rights to privacy with respect to their booking photos. *See, e.g.*, *Detroit Free Press, Inc. v. United States Dep't of Just.*, 829 F.3d 478, 482 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 2158 (2017) (overruling its prior twenty-year-old precedent and upholding Department of Justice's Freedom of Information Act policy categorizing booking photos as confidential on basis that individuals have "a non-trivial privacy interest in booking photos" in part because such photos "fit squarely within th[e] realm of embarrassing and humiliating information" and "convey *guilt* to the viewer"); *World Publ'g Co. v. United States Dep't of Just.*, 672 F.3d 825, 827–28 (10th Cir. 2012) (holding that detainees possess privacy interest in booking photos in part because "mugshots in general are notorious for their visual association of the person with criminal activity," "disclose unflattering facial expressions," and carry with them "a stigmatizing effect [that] can last well beyond the actual criminal proceedings" (citations omitted)); *Karantsalis v. United States Dep't of Just.*, 635 F.3d 497, 503 (11th Cir. 2011) (adopting district court's order holding that defendant has "a continuing personal privacy interest in preventing public dissemination of his booking photographs" in part because "a booking photograph does more than suggest guilt; it raises a unique privacy interest because it captures an embarrassing moment that is not normally exposed to the public eye").

We conclude that Doe has alleged a viable ultra vires claim against Chief Manley and is entitled to a determination on the merits by the trial court in the first instance about whether the information at issue is "confidential." Accordingly, we hold that the trial court properly denied the City's plea to the jurisdiction as to Doe's ultra vires claim.

16

**CONCLUSION**

We affirm in part the trial court's order as to Doe's ultra vires claim against Chief Manley but reverse the order as to Doe's remaining claims against the City of Austin and APD and render judgment dismissing her claims against those parties because the trial court lacks jurisdiction over them.

 

_____

Thomas J. Baker, Justice

Before Chief Justice Rose, Justices Baker and Kelly

Affirmed in Part; Reversed and Rendered in Part

Filed:   December 29, 2020

17