COOK, J., delivered the opinion of the court in which COLE, C.J., and GUY, GIBBONS, ROGERS, SUTTON, McKEAGUE, KETHLEDGE, and WHITE, JJ., joined. COLE, C.J. (pp. 485-86), delivered a separate concurring opinion. BOGGS, J. (pp. 486-94), delivered a separate dissenting opinion in which BATCHELDER, MOORE, CLAY, GRIFFIN, STRANCH, and DONALD, JJ., joined.
OPINION
COOK, Circuit Judge.
In 1996, we held that the Freedom of Information Act (FOIA), 5 U.S.C. § 552, required the release of booking photos of criminal defendants who have appeared in court during ongoing proceedings, finding that criminal defendants lack any privacy interest in the photos. Detroit Free Press, Inc. v. Dep’t of Justice (Free Press I), 73 F.3d 93 (6th Cir. 1996). Twenty years and two contrary circuit-level decisions later, we find Free Press I untenable. Individuals enjoy a non-trivial privacy interest in their booking photos. We therefore overrule Free Press I.
I.
FOIA implements “a general philosophy of full agency disclosure” of government records, U.S. Dep’t of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 754, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (quoting Dep’t of the Air Force v. Rose, 425 U.S. 352, 360, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)), requiring federal agencies to make their records “promptly available” to any person who requests them, 5 U.S.C. § 552(a)(2)-(3). An agency may withhold or redact information that falls within one of nine statutory exemptions. Id. § 552(b). Exemption 7(C), at issue here, permits agencies to refuse requests for “records or information compiled for law enforcement purposes” if public release “could reasonably be expected to constitute an unwarranted invasion of personal privacy.” Id. § 552(b)(7)(C).
Free Press I held that “no privacy rights are implicated” by releasing booking photos “in an ongoing criminal proceeding, in which the names of the defendants have already been divulged and in which the defendants themselves have already appeared in open court.” Free Press I, 73 F.3d at 97. Under those conditions, booking photos reveal “[n]o new information that ... indictees would not wish to divulge” to the public. Id. The court bypassed deciding whether releasing the images following acquittals, dismissals, or *481 convictions would implicate privacy interests. Id.
Bound by Free Press I, the United States Marshals Service (USMS) adopted a “bifurcated policy” for releasing booking photos. Within the Sixth Circuit’s jurisdiction, the USMS would honor all requests for photos under the circumstances outlined in Free Press I. Outside the Sixth Circuit, however, the USMS continued to follow its long-standing policy of refusing requests for booking photos. “Straw man” requesters in Michigan, Ohio, Kentucky, and Tennessee accordingly exploited the policy to obtain photos maintained in other jurisdictions, securing Bernie Madoffs booking photo in one prominent example.
The USMS’s patchwork disclosure system persisted until the Tenth and Eleventh Circuits considered booking-photo disclosure and disagreed with Free Press I's analysis. See World Publ’g Co. v. U.S. Dep’t of Justice, 672 F.3d 825 (10th Cir. 2012); Karantsalis v. U.S. Dep’t of Justice, 635 F.3d 497 (11th Cir. 2011) (per curiam) (adopting district court opinion), cert. denied, — U.S. —, 132 S.Ct. 1141, 181 L.Ed.2d 1017 (2012). Bolstered by these decisions, the USMS abandoned the bifurcated policy in 2012 and refused— nationwide — to honor FOIA requests for booking photos.
Accordingly, when Detroit Free Press (DFP) requested the booking photos of four Michigan police officers charged with bribery and drug conspiracy, the Deputy U.S. Marshal for the Eastern District of Michigan denied the request. In the lawsuit that followed, both the district court and the panel, constrained by Free Press I, ordered disclosure. We granted rehearing en banc to reconsider whether there is a personal-privacy interest in booking photos.
II.
A. Exemption 7(C)’s Personal-Privacy Interest
Exemption 7(C) prevents disclosure when: (1) the information was compiled for law enforcement purposes and (2) the disclosure “could reasonably be expected to constitute an unwarranted invasion of personal privacy.” 5 U.S.C. § 552(b)(7)(C). Neither party disputes that booking photos meet the first requirement. The second requires that we “balance the public interest in disclosure against the [privacy] interest Congress intended [Exemption 7(C)] to protect.” Reporters Comm., 489 U.S. at 776, 109 S.Ct. 1468. The government shoulders the burden of showing that Exemption 7(C) shields the requested information from disclosure. 5 U.S.C. § 552(a)(4)(B).
The Supreme Court has described Exemption 7(C) as reflecting privacy interests in “avoiding disclosure of personal matters,” Reporters Comm., 489 U.S. at 762, 109 S.Ct. 1468, maintaining “the individual’s control of information concerning his or her person,” id. at 763, 109 S.Ct. 1468, avoiding “disclosure of records containing personal details about private citizens,” id. at 766, 109 S.Ct. 1468, and “keeping personal facts away from the public eye,” id. at 769, 109 S.Ct. 1468. Embarrassing and humiliating facts — particularly those connecting an individual to criminality — qualify for these descriptors. See, e.g., id. at 771, 109 S.Ct. 1468 (finding a privacy interest in criminal rap sheets); Union Leader Corp. v. U.S. Dep’t of Homeland Sec., 749 F.3d 45, 53 (1st Cir. 2014) (the names of arrestees); Rimmer v. Holder, 700 F.3d 246, 257 (6th Cir. 2012) (the names and identifying information of individuals associated with investigation of a murder); ACLU v. U.S. Dep’t of Justice, 655 F.3d 1, 8 (D.C. Cir. 2011) (the fact of an individual’s conviction and correspond *482 ing docket number); McCutchen v. U.S. Dep’t of Health & Human Servs., 30 F.3d 183, 187-88 (D.C. Cir. 1994) (a researcher’s investigation and exoneration for academic-integrity concerns); Kiraly v. FBI, 728 F.2d 273, 277 (6th Cir. 1984) (FBI files identifying individuals suspected of criminal activity but not indicted or tried).
Booking photos — snapped “in the vulnerable and embarrassing moments immediately after [an individual is] accused, taken into custody, and deprived of most liberties” — fit squarely within this realm of embarrassing and humiliating information. Karantsalis, 635 F.3d at 503. More than just “vivid symbol[s] of criminal accusation,” booking photos convey guilt to the viewer. Id. (emphasis added). Indeed, viewers so uniformly associate booking photos with guilt and criminality that we strongly disfavor showing such photos to criminal juries. See United States v. Irorere, 69 Fed.Appx. 231, 235 (6th Cir. 2003) (“[T]he Sixth Circuit has condemned the practice of showing ‘mug shot’ evidence to a jury ‘as effectively eliminating the presumption of innocence and replacing it with an unmistakable badge of criminality.’ ” (quoting Eberhardt v. Bordenkircher, 605 F.2d 275, 280 (6th Cir. 1979))); see also United States v. McCoy, 848 F.2d 743, 745-46 (6th Cir. 1988) (finding the district court erred in overruling an objection to lineup photos, which “suggest that [the defendant] is a ‘bad guy’ who belongs in jail”). This alone establishes a non-trivial privacy interest in booking photos.
Other considerations gleaned from Supreme Court decisions strengthen our conclusion. For example, the Court noted that the Exemption 7(C) privacy interest “must be understood ... in light of the consequences that would follow” from unlimited disclosure. See Nat’l Archives & Records Admin. v. Favish, 541 U.S. 157, 170, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004); see also ACLU, 655 F.3d at 7 (“[C]ourts have taken into consideration potential derivative uses of that information.”). In Favish, the Court recognized family members’ privacy interest in death-scene images of their loved one, noting that the deceased’s abusers or murderers could request records under FOIA. 541 U.S. at 170, 124 S.Ct. 1570. Leaving the government leeway “to deny these gruesome requests in appropriate cases” factored into the Court’s decision to recognize a statutory privacy interest. Id. And modern technology only heightens the consequences of disclosure — “in today’s society the computer can accumulate and store information that would otherwise have surely been forgotten.” Reporters Comm., 489 U.S. at 771, 109 S.Ct. 1468; see also Favish, 541 U.S. at 167, 124 S.Ct. 1570.
A disclosed booking photo casts a long, damaging shadow over the depicted individual. In 1996, when we decided Free Press I, booking photos appeared on television or in the newspaper and then, for all practical purposes, disappeared. Today, an idle internet search reveals the same booking photo that once would have required a trip to the local library’s microfiche collection.[1] In fact, mug-shot websites collect and display booking photos from decades-old arrests: BustedMugshots and Just-Mugshots, to name a couple. See David *483 Segal, Mugged by a Mug Shot Online, N.Y. Times, (Oct. 5, 2013), http://www. nytimes.com/2013/10/06/business/mugged-by-a-mug-shot-online.html. Potential employers and other acquaintances may easily access booking photos on these websites, hampering the depicted individual’s professional and personal prospects. See ACLU, 655 F.3d at 7 (noting that Exemption 7(C)’s privacy interest includes facts that “may endanger one’s prospects for successful reintegration into the community” (internal quotation marks omitted)). Desperate to scrub evidence of past arrests from their online footprint, individuals pay such sites to remove their pictures. Indeed, an online-reputation-management industry now exists, promising to banish unsavory information — a booking photo, a viral tweet — to the third or fourth page of internet search results, where few persist in clicking. See Jon Ronson, So You’ve Been Publicly Shamed 263-74 (2015). The steps many take to squelch publicity of booking photos reinforce a statutory privacy interest.
B. DFP’s Arguments
Against the privacy interest elucidated above, DFP interposes the Constitution, the common law and traditional understandings of privacy, the absence of a “web of federal statutory and regulatory provisions” limiting disclosure, and the fact that most states allow mugshot disclosure. DFP posits that FOIA facilitates a free flow of information lacking a background of privacy protection in state and federal law. See Favish, 541 U.S. at 169, 124 S.Ct. 1570 (noting that “Congress legislated against [a] background of law, scholarship, and history when it enacted FOIA”).
1. The Constitution
DFP overemphasizes the Constitution’s role in defining statutory privacy rights. Indeed, in Reporters Committee, the Court shrugged off the lack of a constitutional right to privacy in information connecting an individual to criminal activity before recognizing a statutory right to privacy in the same type of information. 489 U.S. at 762 n. 13, 109 S.Ct. 1468 (citing Paul v. Davis, 424 U.S. 693, 712-14, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)).
2. The Common Law and Legal Traditions
Next, DFP invokes the common law and legal traditions as sanctioning publication of criminal activity. Closely intertwined with public trials, booking photos form part of the public record, and the common law recognizes no invasion-of-privacy tort remedy for publicizing facts in the public record. See Restatement (Second) of Torts § 652D cmt. b (1977); see also id. cmt. f, illus. 13.
The common law and American legal traditions leave undisturbed an existing statutory privacy interest. Even when information concerning. an individual’s person becomes part of the public record, “one d[oes] not necessarily forfeit a privacy interest,” though the interest “dimin-ishe[s].” Reporters Comm., 489 U.S. at 763 n. 15, 109 S.Ct. 1468. Further, the common law differentiates between “facts about the plaintiffs life that are matters of public record,” and matters of public record “not open to public inspection.” Restatement (Second) of Torts § 652D cmt. b. Booking photos, like rap sheets, fit into the latter category, to which the Supreme Court extended privacy protection under Exemption 7(C). See Reporters Comm., 489 U.S. at 763-64, 109 S.Ct. 1468 (“[I]nformation may be classified as ‘private’ if it is ‘intended for or restricted to the use of a particular person or group or class of persons. ..(quoting Webster’s Third New International Dictionary 1804 (1976))). And *484 we already noted the criticism of using mug shots in open trials. See Eberhardt, 605 F.2d at 280.
The dissent’s focus on the historic use of “rogues’ galleries” only confirms the risks at hand&emdash;that the public has long wanted to look at these photos. But that says nothing about the individual’s privacy interest. Surely there can exist both a strong public interest in a mug-shot’s disclosure and a strong privacy interest.
3. State and Federal Laws
Persisting, DFP highlights that some states statutorily mandate the release of booking photos and urges us to follow their lead. See, e.g., Minn. Stat. § 13.82(26)(b) (“[A] booking photograph is public data.”); Neb. Rev. Stat. § 29-3521(1) (noting that “photographs taken in conjunction with an arrest” are public records); Va. Code Ann. § 2.2-3706(A)(l)(b) (ordering release of “[a]dult arrestee photographs taken during the initial intake” unless certain exceptions aPPly)- True, but other states require FOIA-like balancing of public and private interests before disclosing booking photos. See, e.g., 21 Kan. Op. Atty. Gen. 9, No. 87-25, 1987 WL 290422, at *4 (Feb. 9, 1987) (opining that Kan. Stat. Ann. § 45-221(a)(10)(A) allows nondisclosure of booking photos); Prall v. N.Y.C. Dep’t of Corr., 129 A.D.3d 734, 10 N.Y.S.3d 332, 335 (2015) (balancing public and private interests under N.Y. Pub. Off. Law § 89(2)(b) to determine that booking photos need not be disclosed to mug-shot websites). And several states exempt booking photos from public-record disclosure laws. See Del. Code Ann. tit. 29 § 10002(i)(4); Ga. Code Ann. § 50-18-72(a)(4); 65 Pa. Stat. Ann. § 67.708(b)(16); S.D. Codified Laws § 1-27-1.5(5); .see also Kean Exec. Order No. 123 (Nov. 12, 1985) (exempting booking photos from the New Jersey public-records law), http://www.state.nj.us/infobank/ circular/eokl23.shtml.
Decidedly mixed, state laws favor neither wholesale disclosure nor nondisclosure. Regardless, “[sjtate policies ... do not determine” Exemption 7(C)’s meaning, but can evidence broad acceptance of a significant privacy interest. Reporters Comm., 489 U.S. at 767, 109 S.Ct. 1468. More important to the FOIA analysis are the federal regulations and policies drafted by the U.S. Department of Justice and the USMS, see Reporters Comm., 489 U.S. at 764-65, 109 S.Ct. 1468 (noting that the “web of federal statutory and regulatory provisions” limiting rap-sheet disclosure supported a privacy interest (emphasis added)); see also World Publ’g Co., 672 F.3d at 829, and these prevent mug-shot disclosure absent a law-enforcement purpose, see 1987 USMS Publicity Policy at 8.1-2(a); 28 C.F.R. § 50.2(b)(7). A mixed bag of state privacy laws cannot extinguish FOIA personal-privacy protections.
Free Press Fs finding that “no privacy rights are implicated” by booking photos embodies an impermissibly cramped notion of personal privacy that is out of step with the broad privacy interests recognized by our sister circuits. See, e.g., Union Leader Corp., 749 F.3d at 53 (the names of arrestees); World Publ’g Co., 672 F.3d at 830 (booking photos); ACLU, 655 F.3d at 8 (convicted individual’s docket numbers); Karantsalis, 635 F.3d at 503 (booking photos). Individuals enjoy a non-trivial privacy interest in their booking photos, and we overrule Free Press F s contrary holding.
III.
Having found a non-trivial privacy interest, the court must balance that interest against the public’s interest in disclosure. The USMS favors balancing these *485 interests on a case-by-case basis, while DFP advances a categorical approach with the public interest always outweighing the privacy interest. See Reporters Comm., 489 U.S. at 776, 109 S.Ct. 1468 (“[Categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction.” (emphasis added)). We agree with the USMS and adopt a case-by-case approach, elucidating the public interest at issue.
The public’s interest in disclosure depends on “the extent to which disclosure would serve the ‘core purpose of the FOIA,’ which is ‘contributing] significantly to public understanding of the operations or activities of the government.’ ” U.S. Dep’t of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994) (alteration in original) (quoting Reporters Comm., 489 U.S. at 775, 109 S.Ct. 1468). If disclosure is not “likely to advance [a significant public] interest ..., the invasion of privacy is unwarranted.” Favish, 541 U.S. at 172, 124 S.Ct. 1570. “[S]hed[ding] light on an agency’s performance of its statutory duties falls squarely within” FOIA’s core purpose. Reporters Comm., 489 U.S. at 773, 109 S.Ct. 1468. On the other hand, that purpose “is not fostered by disclosure of information about private citizens ... that reveals little or nothing about an agency’s own conduct.” Id.
Favoring a categorical rule over case-by-case balancing, the dissent highlights the public importance of disclosure by pointing to the possibility of mistaken identity, impermissible profiling, and arrestee abuse. But these are phantoms. In cases of mistaken identity, arrestees are not going to protest using their booking photos to show that they are not the villain. Such arres-tees undoubtedly will want the booking photo released so that they too can be released. The same goes for profiling and arrestee abuse. The privacy interest in a booking photo is the defendant’s, and he or she can waive that interest.
IV.
In 1996, this court could not have known or expected that a booking photo could haunt the depicted individual for decades. See Free Press I, 73 F.3d at 97 (finding that, unlike booking photos, rap sheets include information “that, under other circumstances, may have been lost or forgotten”). Experience has taught us otherwise. As the Tenth and Eleventh Circuits recognize, individuals have a privacy interest in preventing disclosure of their booking photos under Exemption 7(C). Of course, some public interests can outweigh the privacy interest, but Free Press I wrongly set the privacy interest at zero. We overrule Free Press I, reverse the grant of summary judgment, and remand to the district court for proceedings consistent with this opinion.

. Beginning in 1997, the U.S. Census Bureau asked Americans about internet access and found that less than one-fifth of American households had internet access at home. By 2013, that number jumped to 74.4%. Thom File & Camille Ryan, Computer and Internet Use in the United States: 2013, U.S. Census Bureau, 2 (2014), http://www.census:gov/ content/dam/Census/library/publications/2014/ acs/acs-28.pdf; Thom File, Computer and Internet Use in the United States, U.S. Census Bureau, 1 (2013), http://www.census.gov/ prod/2013pubs/p20-569.pdf.