RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0190p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

CINCINNATI ENQUIRER, a division of Gannett GP Media, Inc.,

*Plaintiff-Appellant*,

*v.*

DEPARTMENT OF JUSTICE; DRUG ENFORCEMENT ADMINISTRATION,

*Defendants-Appellees*.

No. 21-3966

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:20-cv-00758—Susan J. Dlott, District Judge.

Argued: June 9, 2022

Decided and Filed: August 15, 2022

Before: BOGGS, MOORE, and GRIFFIN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** John C. Greiner, GRAYDON HEAD & RITCHEY, LLP, Cincinnati, Ohio, for Appellant. Kevin Koller, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** John C. Greiner, J. Stephen Smith, Darren W. Ford, Frank M. Schultz, GRAYDON HEAD & RITCHEY, LLP, Cincinnati, Ohio, for Appellant. Kevin Koller, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee.

GRIFFIN, J., delivered the opinion of the court in which BOGGS, J., joined. MOORE, J. (pp. 13–16), delivered a separate dissenting opinion.

---

**OPINION**

---

GRIFFIN, Circuit Judge.

The Cincinnati Enquirer sued the Department of Justice ("DOJ") and the Drug Enforcement Administration ("DEA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking documents related to a United States Attorney's decision not to charge a state prosecutor with obstruction of justice. The district court reviewed the relevant documents in camera and held that they are exempt from disclosure. Based on our own in camera review, we agree and affirm.

I.

The parties stipulated to the facts set out in the Enquirer's complaint. Given the privacy interests at stake, the parties omit most identifying information. We follow their lead.

In 2015, a DEA task force made up of federal, state, and local law enforcement officers began investigating Ryan Jacobs, a drug dealer in Northern Kentucky. Jacobs sold drugs to a married couple who allegedly were "good friends" with the local elected prosecutor, known in Kentucky as a Commonwealth's Attorney. After the task force arrested Jacobs on state drug-trafficking charges, the couple had extensive conversations with the Commonwealth's Attorney about the task force's investigation. After one of these conversations, an assistant state prosecutor requested Jacobs's cell phone records from the task force. This request alerted the task force to the Commonwealth's Attorney's relationship with Jacobs's customers, and it began scrutinizing his involvement in the Jacobs case. The Commonwealth's Attorney's conversations with the couple continued as the task force interviewed them as part of the Jacobs investigation.

The Commonwealth's Attorney soon became involved in the Jacobs case in other ways. Although Jacobs was detained on state charges, the DEA wanted to use him as a cooperating witness in other drug-trafficking investigations. Jacobs therefore moved for a bond reduction. The Commonwealth's Attorney opposed Jacobs's request, and the state court declined to reduce

bond without his consent. Jacobs eventually pleaded guilty to money laundering and conspiring to distribute methamphetamine.

Later, a Kentucky police officer performed a traffic stop on an unrelated individual, finding drugs and guns. The officer called a DEA agent, who told the officer that he would adopt the case for federal prosecution. With the agent en route, the officer sought a state search warrant for the driver's house. The Commonwealth's Attorney told the officer that he would not issue a search warrant if the DEA agent from the Jacobs investigation was involved. The Commonwealth's Attorney offered to provide a search warrant "as long as that specific DEA agent was not involved in the investigation and the DEA agent's name was not on any paperwork."

In 2016, the DEA officially opened an investigation into the Commonwealth's Attorney's conduct, entitled "Operation Speakeasy." According to the complaint, at the end of this investigation, the "DEA and law enforcement officials determined that enough evidence had been obtained to charge [t]he Commonwealth['s] Attorney with obstruction of justice." They presented this evidence to then-U.S. Attorney for the Eastern District of Kentucky Kerry Harvey, but Harvey "refused to bring charges against [t]he Commonwealth['s] Attorney."

In December 2019, a reporter with the Cincinnati Enquirer filed a FOIA request with the DEA, seeking any document related to the Jacobs investigation or Operation Speakeasy. The DEA denied that request under 5 U.S.C. § 552(b)(7)(C), which allows agencies to withhold FOIA-eligible documents if they are "records or information compiled for law enforcement purposes," disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." The DOJ denied the reporter's administrative appeal of the DEA's decision.

The Enquirer then filed this lawsuit against the DEA and DOJ, seeking an injunction to compel defendants to turn over any document responsive to its FOIA request. The parties filed cross-motions for summary judgment. The district court reviewed the responsive documents in camera and weighed the privacy interests of the people discussed in the documents against the public's interest in disclosure. The court concluded that the responsive documents "only

minimally advance[d] a public interest in shedding light on the decision of the United States Attorney to not prosecute the Commonwealth['s] Attorney," and that the "significant privacy interests outweigh[ed] the proffered public interest." The court thus held that § 552(b)(7)(C) exempted these documents from disclosure and dismissed the Enquirer's case with prejudice. The Enquirer timely appealed.

## II.

FOIA codifies "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (quotation marks omitted). A federal agency may withhold requested records only if an enumerated FOIA exemption applies. *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012). If an agency withholds a record under a FOIA exemption, the requester may challenge that decision in federal court and seek an injunction compelling production. § 552(a)(4)(B). The district court reviews the agency's denial de novo and, generally, "the burden is on the agency to sustain its action." *Id.* We likewise review de novo a district court's grant of summary judgment in a FOIA proceeding. *See Rimmer*, 700 F.3d at 255.

In defendants' view, they properly withheld the requested documents under the exemption enumerated in § 552(b)(7)(C)—referred to here as "Exemption 7(C)"—which provides that "records or information compiled for law enforcement purposes" may be withheld if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Put differently, "Exemption 7(C) prevents disclosure when: (1) the information was compiled for law enforcement purposes and (2) the disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Detroit Free Press, Inc. v. U.S. Dep't of Just.*, 829 F.3d 478, 481 (6th Cir. 2016) (en banc) (citation omitted). No party disputes that these records satisfy the first condition.

Exemption 7(C)'s second condition requires us to "balance the public interest in disclosure against the privacy interest Congress intended Exemption 7(C) to protect." *Id.* (quoting *U. S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989) (brackets omitted)). This balancing test is straightforward: If the privacy interest is greater than

the public interest, the documents are exempt from disclosure. But if the public interest outweighs the privacy interest, Exemption 7(C) does not apply. To conduct this balancing test, we must define the privacy and public interests at play in this case.

A.

We begin with the privacy interests. "The Supreme Court has described Exemption 7(C) as reflecting privacy interests in 'avoiding disclosure of personal matters,' maintaining 'the individual's control of information concerning his or her person,' avoiding 'disclosure of records containing personal details about private citizens,' and 'keeping personal facts away from the public eye.'" *Detroit Free Press*, 829 F.3d at 481 (citations omitted). "Embarrassing and humiliating facts—particularly those connecting an individual to criminality—qualify for these descriptors." *Id.* (collecting cases). "[T]his circuit, along with many others, has recognized that people who were investigated for suspected criminal activity or who were otherwise mentioned therein could be subjected to embarrassment, harassment, and even physical danger." *Rimmer*, 700 F.3d at 257 (cleaned up) (collecting cases); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (recognizing that "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation" (citation omitted)). This privacy interest exists for suspects, as well as "third parties mentioned in the documents, such as witnesses, informants, and investigators." *Rimmer*, 700 F.3d at 257.

The Enquirer does not dispute that the people whose names appear in the records at issue here have a privacy interest against being connected to a DEA investigation. Rather, its main argument is that the privacy interests of the Commonwealth's Attorney and Jacobs are reduced because one is a public official and the other's criminality is already known to the public. For their part, defendants agree that some aspects of the privacy interests of Jacobs and the Commonwealth's Attorney are diminished. They concede that "Jacobs' privacy interest is weakened with respect to the fact of his conviction or other publicly disclosed facts." Appellee's Br. 24; *see ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 7 (D.C. Cir. 2011) (holding that the privacy interest of a convicted defendant is "substantially weaker than the privacy interests of individuals who have been investigated but never publicly charged at all"). As to the Commonwealth's Attorney, defendants acknowledge that some courts have suggested that public officials have a

diminished privacy interest that might, "under appropriate circumstances," support disclosure of documents concerning a public-corruption investigation. *See Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 865 (D.C. Cir. 1981). But defendants also point out that these courts have acknowledged that "public officials do not surrender all rights to personal privacy when they accept a public appointment." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1092 (D.C. Cir. 2014) (quotation marks and citation omitted) ("*CREW*").

Thus, we can draw two conclusions about the privacy interests at stake in this case. First, third parties mentioned in the records (such as witnesses and investigators) have a strong privacy interest against disclosure. *See Rimmer*, 700 F.3d at 257. And second, consistent with our sister circuit's case law, the Commonwealth's Attorney and Jacobs have a somewhat reduced privacy interest.

## B.

With the privacy interests defined, we turn to the public interest. But first, recall our earlier statement that, usually in FOIA litigation, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). We are now in one of the few areas where the burden is not on the agency. The Supreme Court has held that "to give practical meaning" to Exemption 7(C), "the usual rule that the [requester] need not offer a reason for requesting the information must be inapplicable." *Nat'l Archives & Rec. Admin v. Favish*, 541 U.S. 157, 172 (2004). If the government establishes a privacy interest for which Exemption 7(c) applies, the burden shifts to the requester to "establish a sufficient reason for the disclosure." *Id.* Because defendants have established privacy interests in these records, the Enquirer must show a weightier public interest in favor of disclosure.

The public's interest in disclosure depends on "the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government*.'" *Detroit Free Press*, 829 F.3d at 485 (quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994)). "If disclosure is not likely to advance a significant public interest, the invasion of privacy is

unwarranted." *Id*. (quoting *Favish*, 541 U.S. at 172) (quotation marks, brackets, and ellipses omitted). "Shedding light on an agency's performance of its statutory duties falls squarely within FOIA's core purpose." *Id*. (quoting *Reps. Comm.*, 489 U.S. at 773) (brackets, quotation marks, and citation omitted). But that purpose "is not fostered by disclosure of information about private citizens . . . that reveals little or nothing about an agency's own conduct." *Id*. (citation omitted).

The Enquirer "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that "the information is likely to advance that interest." *Favish*, 541 U.S. at 172. The newspaper asserts that there are two public interests here: (i) the interest in determining whether the U.S. Attorney acted improperly by declining to prosecute, and (ii) the interest in the public educating itself about substantive law-enforcement policy and how the DOJ performs its statutory duties.

i.

Where "the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure." *Id*. at 174. "Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged [g]overnment impropriety might have occurred." *Id*.

At this point, it is important to consider FOIA's aim regarding public corruption: to "shed[] light on misconduct of the *federal* government, not *state* governments." *Rimmer*, 700 F.3d at 258. Because the statute addresses only federal misconduct, there is no "FOIA-recognized public interest" in disclosing federal files merely because they show wrongdoing committed by state officials. *Id*. at 259 (citation omitted). This means that, no matter how outrageously the Commonwealth's Attorney may have acted, his alleged conduct cannot substantiate a public interest sufficient to merit disclosure of the documents at issue.[1] Instead, we must focus solely on the alleged conduct of the federal officials involved in this case.

---

[1]The Enquirer attempts to shift the focus to the Commonwealth's Attorney at least once in its brief. It argues that documents are subject to disclosure if they would "shed light on 'what the Government is up to.'"

The Enquirer homes in on the U.S. Attorney's decision not to prosecute the Commonwealth's Attorney for obstruction of justice. The newspaper argues that, because the federal prosecutor and the DEA seemingly disagreed about whether the Commonwealth's Attorney "had engaged in serious misconduct, the public has an overriding interest in evaluating that conduct for itself." Appellant's Br. 32. These records "would also shed light on the conduct of the DOJ in reviewing the evidence . . . and whether the DOJ's decision to go against the DEA's recommendation of charges was merited in light of the evidence[.]"[2] In short, the Enquirer wants these documents so that it can review for itself the U.S. Attorney's decision to decline prosecution.

"[T]he decision to prosecute an individual for a crime is one typically entrusted solely to the prosecutor's discretion and rarely subject to judicial review or public scrutiny." *Fund for Const. Gov't,* 656 F.2d at 863. Some courts have, however, recognized that there might be a public interest in examining prosecutorial decisions under some circumstances. *See CREW*, 746 F.3d at 1093–94. Because Exemption 7(C) usually requires a "case-by-case balancing approach," *id*. at 1095 (quotation marks omitted), we look to the specifics of this case.

The stipulated facts show that the Commonwealth's Attorney engaged in three categories of allegedly improper conduct: (1) counseling targets of a DEA investigation; (2) opposing Jacobs's bond reduction; and (3) telling a police officer in an unrelated investigation that he would not seek a search warrant if a certain DEA agent was involved in the case. Based on this conduct, the DEA recommended charging the Commonwealth's Attorney with obstruction of justice. The U.S. Attorney declined to bring charges. The Enquirer argues that these facts warrant a belief by a reasonable person that the U.S. Attorney "acted negligently or otherwise improperly in the performance of [his] duties." Appellant's Br. 33 (quoting *Favish*, 541 U.S. at 173).

---

Appellant's Br. 31 (citing *Favish*, 541 U.S. at 171). It then asserts that "[a]ccording to the DEA, what the Commonwealth's Attorney 'was up to' was obstruction of justice." *Id*. But the "government" referenced in *Favish* is the *federal* government, not the *state* government. 541 U.S. at 161; *see also Rimmer*, 700 F.3d at 258.

[2]To the extent that the Enquirer's brief on appeal could be read to assert a public interest in reviewing how the DEA conducted its investigation, *see* Appellant's Br. 33–34, it expressly waived this argument in the district court. "[A]rguments not squarely presented to the district court are not reviewed on appeal." *Potter v. Comm'r of Soc. Sec.*, 9 F.4th 369, 381 (6th Cir. 2021) (citation omitted).

We disagree. Plaintiff has established few facts concerning the U.S. Attorney's conduct, instead focusing overwhelmingly on how the Commonwealth's Attorney acted. The facts that plaintiff did establish show only that, after the DEA concluded that there was sufficient evidence to bring charges against the Commonwealth's Attorney, the U.S. Attorney declined to bring charges. The Enquirer offers no evidence or allegation as to *why* the U.S. Attorney reached this decision.

This dearth of information is significant because a prosecution decision "is properly informed by a variety of factors and not solely by the prosecutor's determination of the prognosis for a successful prosecution." *Fund for Const. Gov't*, 656 F.2d at 863. For example, according to the DOJ's Justice Manual, a federal prosecutor may decline to bring charges, even when there is sufficient admissible evidence to "obtain and sustain a conviction," if doing so "would serve no substantial federal interest." Dep't of Just., Justice Manual § 9-27.220(1) (2018) (available at https://www.justice.gov/jm/jm-9-27000-principles-federal-prosecution). Determining whether a substantial federal interest exists requires the U.S. Attorney to "weigh all relevant considerations," including "Federal law enforcement priorities," "[t]he nature and seriousness of the offense," "[t]he person's culpability in connection with the offense," and "[t]he person's history with respect to criminal activity." *Id.* § 9-27.230(1), (2), (4), and (5). Similarly, the American Bar Association provides that a prosecutor "is not obliged to file or maintain all criminal charges which the evidence might support," and should consider, among other things, "the strength of the case," "the extent or absence of harm caused by the offense," and "the fair and efficient distribution of limited prosecutorial resources." Criminal Justice, Standards for the Prosecution Function, Standard 3-4.4(a)(i), (ii), and (xiv) (4th ed. 2017).

The Enquirer provides no evidence that would allow a reasonable person to conclude that the U.S. Attorney's decision was motivated by some improper influence rather than one of the many factors he was allowed—indeed, compelled—to consider. The newspaper's argument rests instead on the inference that, if the DEA thought charges should be brought, the Commonwealth's Attorney should have been indicted, and the fact that he was not indicted indicates corruption or incompetence in the U.S. Attorney's Office. Because this is a logical leap unsupported by any record evidence, it is "a bare suspicion," and is insufficient to establish a

public interest in favor of disclosure. *Favish*, 541 U.S. at 174; s*ee also Rimmer*, 700 F.3d at 258 (explaining that a requester must present "more than bare allegations of federal malfeasance" to establish a sufficient public interest). Accordingly, the Enquirer has failed to establish a sufficient public interest in revealing possible government impropriety to outweigh the privacy interests here.

ii.

The Enquirer alternatively argues that it need not satisfy *Favish*'s reasonable-person standard because, even if there was no negligence or impropriety by federal officials, disclosing these documents would shed light on how the DOJ performed its statutory duties, *see Detroit Free Press*, 829 F.3d at 485, and would allow the public to understand important matters of substantive law-enforcement policy, *see Reps. Comm.*, 489 U.S. at 766 n.18 ("[M]atters of substantive law enforcement policy . . . are properly the subject of public concern.").

A single decision "not to prosecute a person, standing alone, does very little to 'shed light on the agency's performance of its statutory duties.'" *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 898 F. Supp.2d 93, 106 (D.D.C. 2012) (quoting *Reps. Comm.*, 489 U.S. at 773) (bracket omitted). This is because a particular decision whether to prosecute represents "only a single data point" for the prosecutor's conduct. *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 978 F. Supp. 2d 1, 13 (D.D.C. 2013) (citation omitted). And even if these documents implicate a general public interest in law-enforcement education and oversight, they still must be "likely to advance" that public interest. *Favish*, 541 U.S. at 172.

After reviewing the responsive documents in camera, we conclude that they only minimally advance this education-and-oversight interest. Notably, the records do not speak to the U.S. Attorney's decision-making process: They say nothing about how he weighed extra-evidentiary considerations. *See* Justice Manual § 9-27.230. Instead, the documents describe only the DEA's investigation, which is one aspect of the multifaceted process of exercising prosecutorial discretion. Because these documents show only one part of the considerations relevant to one prosecutorial decision, the public's interest in them is minimal. *See Jud. Watch*, 898 F. Supp. 2d at 106.

C.

We now must balance the privacy interests implicated by these documents against the minimal public interest that their disclosure would advance.  Although the Commonwealth's Attorney and Jacobs might have a reduced expectation of privacy, their privacy interests are not insubstantial.  "[P]ublic officials do not surrender all rights to personal privacy when they accept a public appointment," *CREW*, 746 F.3d at 1092 (quotation marks omitted), and Jacobs retains "more than a de minimis privacy interest" in investigative files related to his conviction and criminal history, *ACLU*, 655 F.3d at 12.  Further, facts "connecting an individual to criminality" are at the core of the privacy interests protected by Exemption 7(C).  *Detroit Free Press*, 829 F.3d at 481.  We are also mindful that the third parties mentioned in the documents have an undisputedly strong privacy interest against disclosure.  *Rimmer*, 700 F.3d at 257.  On the other side of the scale, the public interest lies only in examining the U.S. Attorney's decision not to charge the Commonwealth's Attorney with obstruction of justice.  Our in camera review confirms that these documents shed little light on why that decision was made and only minimally advance a public interest in law-enforcement education and oversight.

Balancing these interests, we conclude that the privacy interests implicated by these documents outweigh the public's interest in disclosure.  Accordingly, their disclosure would constitute an unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(7)(C).  The exemption applies.

III.

Our work is not yet finished.  FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt[.]" § 552(b).  "Under this principle of segregability, an agency cannot justify withholding an entire document simply because it contains some material exempt from disclosure." *Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 553 (6th Cir. 2001).  Documents can be withheld in their entirety, however, if they are not segregable, which occurs when "exempt and nonexempt information [is] 'inextricably intertwined,' such that the excision of exempt information would impose significant costs on the agency and produce an edited document with

little informational value." *ACLU of Mich. v. FBI*, 734 F.3d 460, 468 (6th Cir. 2013) (citation omitted).

Here, the district court found that the documents were not segregable.  We agree.  We have reviewed the documents in camera and conclude that redacting the exempted information would leave them with "little informational value." *Id*.  Thus, the district court correctly found non-segregability and properly withheld the documents in their entirety.

IV.

We affirm the judgment of the district court.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting.  I write separately to express my concern that the majority opinion fails to recognize a significant public interest in federal-prosecutor oversight and inflates the Commonwealth's Attorney's privacy interests in this case. When a federal prosecutor decides not to prosecute an elected state official who is duty-bound to enforce the law, any information about that decision conveys to the public whether the federal "government had the evidence but nevertheless pulled its punches."  *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1093 (*CREW*) (D.C. Cir. 2014).

"'[M]atters of substantive law enforcement policy are properly the subject of public concern,' whether or not the policy in question is lawful."  *Id.* at 1095 (quoting *ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 14 (D.C. Cir. 2011)); *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 766 n.18 (1989).  For that reason, the Department of Justice's decision not to prosecute a former House Majority leader for corruption and the Special Counsel's decision not to prosecute members of the President's campaign team for election interference each implicated "weighty" and "substantial" public interests in prominent D.C. Circuit cases.  *CREW*, 746 F.3d at 1092–93; *Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*, 18 F.4th 712, 720 (D.C. Cir. 2021).  The information sought in both those cases elucidated how the government "carried out [its] duties to investigate and prosecute criminal conduct."  *Elec. Priv. Info. Ctr.*, 18 F.4th at 720; *see CREW*, 746 F.3d at 1093.  Likewise, any information that would explain the U.S. Attorney's decision not to prosecute the Commonwealth's Attorney, a high ranking, elected state prosecutor, would reveal whether and how the U.S. Attorney carried out his statutory duties—a significant public concern.

Although the majority observes that a particular decision whether to prosecute represents "only a single data point" for evaluating the prosecutor's conduct, citing *Citizens for Responsibility and Ethics in Washington v. United States Department of Justice*, 978 F. Supp. 2d 1, 13 (D.D.C. 2013), that case further elaborates that even a single decision "can be substantial in some circumstances."  For example, the "public profile of the subject of the investigation"

contributes to the public's interest in disclosure. *Id.*; *see also CREW*, 746 F.3d at 1094 (recognizing that a single prosecutorial data point may implicate a public interest when that data point is "a significant one").

Especially because the government does not dispute that the Drug Enforcement Agency (DEA) concluded that obstruction charges were merited, the decision not to prosecute the Commonwealth's Attorney represents such a "significant" decision. *CREW*, 746 F.3d at 1094. The U.S. Attorney declined to prosecute for obstruction of justice a high-ranking, elected official entrusted with enforcing the law. The crime of obstruction of justice, like the public corruption at issue in *CREW*, "undermine[s] the very foundation of our government." *Id.* at 1093. Information about the U.S. Attorney's decision would shed useful light on how the office approaches the prosecution of such crimes. *Id.* This information could also reveal whether the prominence of the Commonwealth's Attorney's position affected the U.S. Attorney's degree of "investigative scrutiny and prosecutorial zeal." *Id.* at 1094. The data point in this case may be singular, but it is still significant.

I further disagree with the majority that the information contained in the withheld documents is unlikely to advance the public's interest. It is true that the information in the withheld documents pertains only to the DEA's investigation, rather than the U.S. Attorney's decision-making process. It is also true that prosecutors may decline to prosecute for a host of reasons that have nothing to do with the sufficiency of the evidence supporting a charge. But the information withheld provides another significant data point in evaluating whether and how the U.S. Attorney discharged his statutory duties. *Id.* at 1093–94. Even if some of the aspects of the U.S. Attorney's decision remain unclear, the public can evaluate the information gathered in the investigation and form a better understanding about its context. That information on its own informs the public, even if obliquely, about "the manner in which the [government] carries out substantive law enforcement policy." *Id.* at 1093. "One basic general assumption of the FOIA is that, in many important public matters, it is for the public to know and then to judge." *Stern v. F.B.I.*, 737 F.2d 84, 94 (D.C. Cir. 1984).

On the other side of the balance lie the implicated privacy interests. As the subject of the DEA's investigation, the Commonwealth's Attorney's privacy interests are especially salient.

The Commonwealth's Attorney's status as an elected prosecutor, however, severely weakens the privacy interests asserted. *See Common Cause v. Nat'l Archives & Recs. Serv.*, 628 F.2d 179, 184 (D.C. Cir. 1980) (candidates for public office "may have been 'public figures' with less privacy interest than others in information relating to their candidacies"). Regardless of the Commonwealth's Attorney's public stature, the Commonwealth's Attorney is elected to enforce the law. That job description alone diminishes privacy interests in shielding from the public eye investigations into obstructing justice—the same ideal that the public elected the Commonwealth's Attorney to defend. *See Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 865 (D.C. Cir. 1981) (noting that an individual's status as a public figure could weigh in favor of disclosure "under appropriate circumstances"); *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 66 (D.C. Cir. 2018) (noting that the "privacy interest at stake" may vary based on, among other factors, the "severity of the allegations").

The Commonwealth's Attorney's privacy interests are further weakened because the DEA found sufficient evidence to support an obstruction-of-justice charge after a full investigation. The diligence of an inquiry into misconduct informs whether a privacy invasion is warranted. *See Bartko*, 898 F.3d at 66 ("[A]n unsubstantiated allegation that was dismissed as frivolous might implicate a greater privacy interest or a reduced public interest, while an in-depth investigation . . . would trigger a different balancing of interests."). The public has a right to know the contents of that investigation to understand better the context surrounding the U.S. Attorney's decision not to prosecute an official that the public elected. When the Commonwealth's Attorney's enforcement of justice is inherently subject to public scrutiny, the government cannot wield the Commonwealth's Attorney's privacy interests to shield the requested documents from disclosure.

As for the other privacy interests in the case, I agree that third parties retain substantial interests in keeping their personal information and involvement in this case private. *See Rimmer v. Holder,* 700 F.3d 246, 257 (6th Cir. 2012). I further agree that Jacobs's convictions reduce his privacy interests, but that Jacobs retains a privacy interest in any facts about him that have not been publicly disclosed. *See Elec. Priv. Info. Ctr.*, 18 F.4th at 719; *ACLU*, 655 F.3d at 7. Those interests provide little justification for withholding the requested documents, however, because

the government can adequately safeguard them by segregating and redacting any irrelevant or sensitive information.  *See* 5 U.S.C. § 552(b); *Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 553 (6th Cir. 2001).

FOIA "was designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Bartko*, 898 F.3d at 61 (quoting *CREW*, 746 F.3d at 1088). To further those goals, "FOIA mandates a strong presumption in favor of disclosure," which compels courts to construe narrowly statutory exemptions like § 552(b)(7)(C).  *ACLU*, 655 F.3d at 5 (quotations omitted).  Viewing FOIA through the lens of transparency, the public is entitled to know any information underpinning—even if not fully explaining—the federal government's decision not to prosecute for obstruction of justice an elected official charged with enforcing the law.  Because I believe the public should be able to access information to evaluate better the government's decision, I respectfully dissent.